Bronnie ROBERTS et al., Appellants,

v.

Lawrence A. TAYLOR et al., Appellees.

Court of Appeals of Kentucky.

Oct. 28, 1960.

Herman Tye and H. M. Lundy, Tye & Lundy, Barbourville for Bronnie Roberts and Regal Roberts.

R. L. Brown and Pleas Jones, Williamsburg, for Clarence Marler.

G. W. Hatfield, Leonard Stephens, Whitley City, for appellee.

CULLEN, Commissioner.

On Christmas Eve, 1957, around 6:45 p. m., Mary Sue Taylor, a nine-year-old girl, undertook to cross U. S. Highway 27 at a point about one mile north of Whitley City. The highway at this point runs north and south, and Mary Sue was crossing from her home on the east side to a friend's home on the west side. She was struck while in the west lane by a southbound car driven by Regal Roberts, with whom his brother Bronnie Roberts was riding. She fell to the pavement, partly in the east lane, and while lying on the highway was run over by a northbound car alleged to have been operated by Clarence Marler. She died a few hours later. Her administrator brought action against the Roberts brothers and Marler, and recovered a joint judgment against them, upon a jury verdict, for $20,000. All three of the defendants have appealed.

The three appellants join in making the contention that the court erred in not sustaining their motions that Marler as one defendant, and the two Roberts brothers as a set of defendants, each be allowed three peremptory challenges to jurors. Each had cross-claimed against the other for *contribution* and *indemnity*.

Although KRS 29.290 provides that "each party litigant" in civil actions shall have the right of peremptory challenge to three jurors, the statute has been construed to mean that each defendant, in cases involving multiple defendants, is not entitled to three challenges unless the interests of the defendants are antagonistic and their defenses are inconsistent. See Pendly v.

Illinois Central R. Co., 92 S.W. 1, 28 Ky. Law.Rep. 1324.

In Williams v. Whitaker, Ky., 293 S.W. 2d 627, 64 A.L.R.2d 504, and in Price v. Bates, Ky., 320 S.W.2d 786, both of which involved collisions of two automobiles giving rise to actions against multiple defendants who cross-claimed against each other for *damages,* this Court held it was reversible error not to allow each defendant three challenges. In the Williams case the driver of one car sued the two occupants of the other car (there being a question as to which one was the driver), and one of the defendants cross-claimed against the other for damages. In the Price case the passenger in one car sued the drivers of both cars, and each cross-claimed against the other for damages.

In the Williams case the Court indicated approval of the action that had been taken by the circuit court in Vaughan's Adm'r v. Louisville & N. R. Co., 297 Ky. 309, 179 S.W.2d 441, 152 A.L.R. 1060, in allowing three challenges to each of the defendants in a personal injury action by a passenger in an automobile which had been struck by a train, against the automobile's owner and the railroad company. In that case there were no cross-claims.

■ While the fact that cross-claims have been asserted between defendants, whether for damages, contribution or indemnity, may be determinative of the question of whether the judgment in the action is res adjudicata of the liabilities between the defendants (see Gish Realty Co. v. Central City, Ky., 260 S.W.2d 946), we do not consider it to be necessary that cross-claims be asserted in order to establish that the interests of the defendants are antagonistic for the purposes of allowance of jury challenges.

Where the defendants in a personal injury action are charged with independent acts of negligence, as in the Vaughan case and in this case, and as in most any case of a collision of two or more vehicles involving a claim by a passenger, the interests of the defendants are most always antagonistic, because each may escape liability or reduce his liability by convincing the jury that the other was solely or primarily responsible. The assertion of cross-claims for indemnity or contribution will merely formalize the antagonism of interests in this regard.

■ It is our opinion that in the instant case the interests of Marler and of the Roberts brothers were in fact antagonistic (regardless of the cross-claims) and that it was prejudicial error to overrule their motions for separate rights of challenge.

Other contentions of the appellants require our consideration.

■ The appellant Marler maintains that there was insufficient evidence to sustain the verdict against him. This is on the theory that there was no probative evidence that his car was in fact the northbound car that ran over the girl as she lay in the road. In his testimony he admitted that he did pass the scene of the accident a few moments after the girl was struck and while she was lying on the pavement, but he stated that he swerved around the girl's body and did not run over her. His contention is that it must have been some other car that ran over her. The contention is not sustainable because, in addition to the testimony of one eyewitness identifying Marler as the driver of the car that ran over the girl, the other evidence showed almost conclusively that only one northbound car passed the scene between the time the girl was struck by the Roberts car and the time her parents and other witnesses gathered around her on the highway. Several witnesses testified that the wheels of the northbound car ran over the girl and pushed her body along the pavement. The jury could hardly have reached any conclusion other than that the Marler car ran over the girl.

■ The appellant Marler further maintains that the parents of the girl, who would

be the beneficiaries of the wrongful death recovery, should have been held to be contributorily negligent as a matter of law, so as to bar any recovery for the wrongful death. He relies on Acres v. Hall's Adm'r, Ky., 253 S.W.2d 373, where the parents of a four-year-old girl parked their car on a bridge on a heavily traveled highway and paid no attention to the movements of the child as they gazed at the scenery. The facts in that case are not comparable to those in the instant case. Here the girl was nine years old, of superior intelligence, and had crossed and walked along the highway many times, without difficulty, in going to and returning from the school bus pick-up point and in errands to the neighborhood store. The trial court submitted the question of the parents' contributory negligence to the jury, under a proper instruction, and this is all that the appellants were entitled to.

The appellant Bronnie Roberts contends that a verdict should have been directed in his favor, on the ground that the evidence did not show him to be the owner of the car that his brother was driving. The two Roberts brothers gave testimony to the effect that, although the paper title to the car was in Bronnie's name, they had in fact traded cars a few months before the accident, and they introduced in evidence a canceled check to a finance company, signed by Regal Roberts, which had paid the balance due on the purchase price of the car. However, there was evidence that the night of the accident both of the brothers told the investigating officers that Bronnie was the owner of the car. Furthermore, in January following the date of the accident Bronnie renewed the registration of the car in his name. We think the evidence was sufficient to sustain a finding that Bronnie was the owner of the car. As concerns the matter of agency, it appears that Bronnie was unable to drive because he had a broken leg in a cast, and the trip on the occasion of the accident was a mutual venture for the purpose of visiting friends and relatives (and perhaps drinking beer). The evidence warranted a conclusion that Regal was driving as an accommodation to Bronnie and was Bronnie's agent.

The appellant Roberts brothers further contend that a verdict should have been directed in their favor on the ground that there was insufficient proof of negligence in the operation of their automobile. The evidence showed that the place of the accident was very well illuminated by lights from a service station across the road from the Taylor home; the atmospheric conditions were clear; an attendant at the filling station had seen the Taylor girl standing by the east side of the road for several moments before the accident occurred; and there was a berm some 15 feet wide on the east side of the road in front of the Taylor home. Nevertheless neither of the Roberts brothers saw the girl until the instant their car struck her. Skid marks indicated that their car traveled 148 feet before coming to a stop. The road was straight for a distance of some 1000 feet north from the point of the accident. There was testimony that the Roberts car was traveling at least 45 miles per hour, which, as will later be discussed, was in excess of the speed limit. We think the evidence was sufficient to sustain a conclusion that the driver of the Roberts car was negligent as to lookout, because the girl must have traversed a distance of 25 feet, in plain view, between the point where she was standing on the side of the road and the point where she was struck; yet the Roberts brothers never saw her. The evidence also would support a finding that there was negligence as to speed.

Another contention of the appellant Roberts brothers is that the Taylor girl should have been held guilty of contributory negligence as a matter of law. The answer to this is that since she was within the age group as to which there is a rebuttable presumption of incapability of contributory negligence, she could not be found guilty of contributory negligence as a mat-

ter of law. Baker v. Sizemore, Ky., 338 S.W.2d 386.

The appellant Roberts brothers further maintain that the court erred in instructing that the speed limit at the place of the accident was 35 miles per hour. The instruction was based upon a determination by the trial court that the place of the accident was a residential district, which is defined in KRS 189.390(8) (b) as being:

"The territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of 300 feet or·more is in the main improved with residences or residences and buildings in ·use for business."

The question of whether a particular area is a residential district is one of law. Bowling Green-Hopkinsville Bus Co. v. Adams, Ky., 261 S.W.2d 14; Mayer v. Dickerson, Ky., 321 S.W.2d 56.

The place of the accident here involved was a small settlement about one mile north of Whitley City, typical of settlements on the outskirts of towns and cities. Beginning at a point 500 feet north of the place of the accident and extending to a point 260 feet south thereof, there are along the west side of the highway the following buildings, in order: A coal tipple; a fruit market; a general store; a clothing store; two residences; a service station; and two more residences. Two-thirds of the frontage within this distance is occupied by residences and businesses. Within a distance of 150 feet each way from the place of the accident almost three-fourths of the frontage on the west side is made up of residences and a business structure. While the question is not to be determined on the basis of mathematical calculations, Bowling Green-Hopkinsville Bus Co. v. Adams, Ky., 261 S.W.2d 14, we think that considering all factors the nature of this area was such as to make it a residential district within the meaning of the statute. Certainly the west side of the highway for a considerable distance was "in the main" occupied by residences and business structures in close proximity, and we do not consider it to be required by the statute that both sides be so occupied.

As another ground of error the appellant Roberts brothers assert that the court should have given an instruction authorizing their exoneration from liability upon a finding that the negligence of Marler was an intervening cause. The rule is that the original negligent actor is not relieved of liability by the subsequent negligent acts of another if the subsequent acts might reasonably have been foreseen. Ambrosius Industries, Inc. v. Adams, Ky., 293 S.W.2d 230. Here we think it could reasonably have been foreseen by the Roberts brothers that if they struck the Taylor girl and knocked her helpless to the pavement, another motorist might negligently run over her. Accordingly, the Roberts brothers were not entitled to an instruction on intervening cause.

A final contention of the appellant Roberts brothers is that error was committed in the admission of evidence that the brothers had been in a "beer joint" around dark on the evening of the accident. On cross-examination the brothers were asked whether they were intoxicated, whether they had been drinking intoxicating beverages, and whether they had been in the beer joint. They answered in the negative. A witness then was put on who testified that he smelled liquor on Regal Roberts' breath at the scene of the accident, and that he had seen the brothers in the beer joint earlier that evening. Two other witnesses also were permitted to testify that they saw the brothers in the beer joint.

Evidence of intoxication of the brothers would have been admissible as bearing on the question of their negligence. Louisville Taxicab & Transfer Co. v. Tungent's Adm'r, 313 Ky. 1, 229 S.W.2d 985; Whitney v. Penick, 281 Ky. 474, 136 S.W.2d 570; Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S.W.2d 423. It would have had a

particular bearing here on the question of why the brothers did not see the Taylor girl.

We think it was within the scope of proper cross-examination, considering its permissible use for the discovery of relevant evidence, to inquire of the brothers as to their condition as respects intoxication, including the matter of their presence a short time before the accident in a place devoted to the dispensing of intoxicants. The evidence sought to be elicited was relevant, and upon their denials, it was proper to permit impeaching evidence.

Our conclusion is that error was committed only in overruling the motions of the defendants to be allowed separate challenges. For this error the judgment is reversed, with directions to grant a new trial.