**Piatt C. SULLIVAN, Appellant,**

v.

**Eddie Wayne BOWLING, Appellee.**

Court of Appeals of Kentucky.

May 26, 1972.

**84**

Charles E. Duncan, Duncan & Lehnig, Louisville, for appellant.

William A. Buckaway, Jr., Louisville, for appellee.

EDWARD P. HILL, Jr., Judge.

Today we write another chapter in a story in a common, everyday automobile accident that occurred more than five years back. The case has been in the lap of this court since January 8, 1971. We mention these matters to remind the bench, the bar, and the public of the congestion in our courts and the slow process of court proceedings.

On March 21, 1967, appellant Piatt C. Sullivan, headed east, stopped at a stop sign on Dutchmans Lane, a two-lane highway, at its intersection with Breckinridge Lane, a four-lane highway (two lanes for northbound and two for southbound traffic). She then started across, and when she was nearing the center of Breckinridge Lane, a car still unidentified came from a parking lot of the G.E.S. Discount Store on the corner of Breckinridge Lane and Dutchmans Lane causing Mrs. Sullivan to stop her car momentarily. After the car passed in front of Mrs. Sullivan's car, she proceeded on across Breckinridge Lane. Appellee Eddie Wayne Bowling, traveling north in the right or outside lane of Breck-

inridge Lane at about 30 miles per hour according to his own testimony, ran into the Sullivan car, which he claims suddenly appeared in his path.

▌ Appellee brought an action for damages. The trial ended with a verdict for appellee in the sum of $8,212.03 found by the jury pursuant to an instruction by the court to find appellant guilty of negligence and to fix the amount of the damages. By so doing, the trial court found as a matter of law that appellee was not guilty of contributory negligence. This we think was error taking the appellee's version of the facts. Here we list facts sufficient to justify our conclusion.

The accident occurred on a sunny, dry afternoon at a busy intersection. As appellee was approaching the intersection, he came over an elevation in Breckinridge Lane that enabled him to have a clear view of the congestion at the intersection. He testified he was making 35 miles per hour 300 feet south of the intersection and had slowed down to 30 miles per hour entering the intersection. He described his excellent view of the intersection, into which he proceeded at 30 miles per hour, as follows:

"Q 210 What did you see in the intersection as you approached, say, within that distance? How did it appear to you?

"A Well, from 300 feet there were cars, which I could see by the high position of elevation where I was, at Dutchman's Lane backed back into the curve, which does not show on your scale. There were cars at the entrance or exit of G E S parking lot here, four or maybe more.

"Q 211 Would you describe the condition as being one of mass confusion in this intersection?

"A Well, in the deposition I did describe it that way. It was, I guess, under the pressure of cross questioning in

the deposition I used poor terminology. What I should have said was congestion rather than confusion.

"Q 212 Were there blinker lights going on all corners and around on several cars?

"A There were three blinker lights going that I know of.

"Q 213 And were there also cars turning in every direction?

"A There were cars attempting to turn or waiting to turn in three different directions that I knew of."

Appellee also admitted observing the unknown vehicle come out of the G.E.S. parking lot and across his path. To use his own words to describe what then occurred: "When the car that was turning left out of the G.E.S. parking lot cleared my vision, Mrs. Sullivan's car just seemed to come out of the trunk suddenly." The fact is Mrs. Sullivan's car came in a straight line, and it was within his vision for some time before he observed it. We could go on, but these facts clearly presented a jury issue on the question of appellee's contributory negligence, and the trial court erred in failing to submit that issue to the jury. See Ellison v. Begley, Ky., 448 S.W.2d 371 (1969), and Webb Transfer Lines, Inc. v. Taylor, Ky., 439 S. W.2d 88 (1968).

■ The only other question presented on this appeal concerns the propriety of the trial court's refusing to permit appellant to read the depositions of two employees of the Ford Motor Company to rebut appellee's contention that the consequences of the wreck contributed to his discharge at the Ford plant. We think the pertinent portion of these depositions was competent in rebuttal.

The judgment is reversed with direction to grant appellant a new trial.

All concur.