Sylvia Elizabeth DAVENPORT, By and Through her husband and next friend, Harold DAVENPORT, and Harold Davenport, Individually, Appellants,

v.

EPHRAIM McDOWELL MEMORIAL HOSPITAL, INC.; Bill E. Barnett; Bill E. Barnett, P.S.C.; and Danville Anesthesia Associates, a Partnership, Appellees.

No. 87–CA–861–MR.

Court of Appeals of Kentucky.

Dec. 22, 1988.

Discretionary Review Denied by Supreme Court May 31, 1989.

**58**

Joe C. Savage, Savage, Garmer & Elliott, P.S.C., Lexington, for appellants.

George C. Piper, Dean T. Wellman, Martin, Ockerman & Brabant, Lexington, for appellee, Ephraim McDowell Memorial Hosp., Inc.

P. Joseph Clarke, Clarke & Clarke, Danville, for appellees, Bill E. Barnett, Bill E. Barnett, P.S.C., and Danville Anesthesia Associates, a Partnership.

Before HOWERTON, C.J., and COMBS and McDONALD, JJ.

COMBS, Judge.

This appeal is from the Boyle Circuit Court where a jury returned a verdict in favor of appellees, Ephraim McDowell Memorial Hospital (Hospital), Dr. Bill Barnett, Bill Barnett P.S.C., and Danville Anesthesia Associates, as against appellants Sylvia and Harold Davenport, husband and wife. The trial court entered judgment accordingly. Appellants' complaint against appellees alleged that Sylvia suffered severe personal injury while a patient at the hospital which was a result of the appellees' medical negligence. We reverse the judgment of the trial court, and remand the action for a new trial.

Sylvia was admitted to the hospital for comparatively minor surgery. She had had a heart condition for several years which was described as mitral valve prolapse with atrial fibrillation, meaning her heart would quiver rather than beat strong and healthy. The surgery was for the purpose of exploring for cancer and closure of a colostomy. The anesthesiologist was appellee, Dr. Bill Barnett. The surgeon was Dr. Chris Jackson. One of the anesthetics administered was Sufenta. The surgery went without complications.

Sylvia was taken to the recovery room at 11:35 a.m. She was connected to a heart monitor which was equipped with an alarm to sound in case her heartbeat stopped. She was awake and cogently spoke with Dr. Barnett about the operation. Her vital signs were normal. Dr. Barnett and a nurse, Wilma Pence, noted that Sylvia's heart had converted to a normal sinus rhythm and was pumping properly. Dr. Barnett left the recovery room, and placed Sylvia in the charge of nurse Louise Sexton. Dr. Jackson came into the room, briefly spoke with Sylvia, and left.

Nurse Sexton again took Sylvia's vital signs at 11:45 a.m. She then walked to a nearby nurses' desk. Another nurse, Beverly Wolfe, noticed at 11:46 a.m. that Sylvia was not breathing and was turning blue. The heart monitor was showing a flat line, but had sounded no alarm because its alarm system had either not been activated or its volume had been adjusted low enough to be inaudible.

CPR was commenced and Drs. Barnett and Jackson returned to the recovery room and continued efforts to resuscitate Sylvia. Sometime later spontaneous cardiac activity returned. Sylvia remained comatose and was placed on a respirator. She is now permanently comatose.

■ Appellants' first argument for reversal of the judgment is that the trial court erred twice during the jury selection process. They complain first that it was error to allow the coappellees to jointly exercise six peremptory strikes when their

interests were not antagonistic; and second, that it was error not to sustain their motion to strike two members of the jury panel for cause.

CR 47.03(1), (2) states that:

In civil cases each opposing side shall have three peremptory challenges, but coparties having antagonistic interests shall have three peremptory challenges each.

If one or two additional jurors are called, the number of peremptory challenges for each side and antagonistic coparty shall be increased by one.

Additional jurors were called.

The record reveals that during discussion in chambers counsel for Dr. Barnett, Barnett, P.S.C., and Danville Anesthesia Associates, informed the court that the interests of the coappellees were not antagonistic.

Having heard this, counsel for the appellants then argued the court to allocate four peremptory strikes to the appellants and four collectively for the coappellees, to be exercised in collaboration. The trial court decided to allow appellants four peremptory strikes and the coappellees collectively six peremptory strikes. This was reversible error.

The interests of the coappellees were indeed not antagonistic. Appellees argue that despite the representations of their trial counsel, whether or not interests are antagonistic is a question of law, and not a matter to be stipulated by counsel. We consider the interests of the coappellees not antagonistic as a matter of law.

The case of *Roberts v. Taylor*, Ky., 339 S.W.2d 653 (1960), is relied upon by the appellees for the proposition that where the defendants in a personal injury action are charged with independent acts of negligence, their interests are almost always antagonistic because each may escape liability or reduce liability by convincing the jury that the other was solely or primarily responsible. That is a somewhat mutated depiction of *Roberts, supra*.

The facts in *Roberts* were that a little girl was struck by an automobile while she was crossing a highway. A second driver, approaching the prostrate child from the opposite direction then ran over her. The two drivers were in no way related or acting in concert. Cross-claims for contribution and indemnity were filed. *Roberts* decided that cross-claims themselves are not necessary for the existence of antagonistic interests, but we mention for the sake of thoroughness that in this case none were filed. Surely, cross-claims or their absence, while not dispositive of the issue of the existence of antagonistic interests, is a fact to be weighed in the balance along with all others.

The *Roberts* court's actual words were that defendants charged with independent acts of negligence "in most any case of a collision of two or more vehicles involving a claim by a passenger" will mean that the defendants' interests are antagonistic. *Roberts* was a clear-cut, extreme case of antagonistic interests that is inapposite to our facts here. Here, not only were no cross-claims filed, appellees' shared the same theory of the case, *i.e.*, that Sylvia's condition was not a result of renarcotization, but sprang from her previous heart condition that prompted a brain stem embolus. Granting the two non-antagonistic appellees six peremptory strikes was reversible error as a matter of law. *Kentucky Farm Bureau Mutual Ins. Co. v. Cook*, Ky., 590 S.W.2d 875 (1979).

We also agree with the appellants that it was reversible error for the trial court not to strike two jurors from the jury panel for cause shown after those jurors' own statements called their impartiality seriously into question.

One juror was asked the following question by appellants' counsel and gave the following answer:

COUNSEL: I know that it's a hard question, but do you feel in all fairness with your husband nurse who worked at the hospital and with you an employee, a former employee of this hospital, would you, knowing the doctor that is involved and with you knowing the nurses that are involved as you do that it would be better for you to excuse yourself?

JUROR: Probably.

That juror's impartiality was also attacked by two of Sylvia's daughters who claimed to have overheard remarks made by the juror outside the courtroom prior to jury selection. The daughters told the court that they had heard the juror tell someone that she loved the hospital and Dr. Barnett, and that he had helped with the delivery of her child. She was also said to have been heard to profess her strong desire to serve as a juror on the case. The juror denied having made these statements, save the one about Dr. Barnett acting as anesthesiologist during the birth of her child.

The other juror was at the time of trial married to a doctor who was on the hospital staff, and she herself was a member of the hospital auxiliary. She was socially acquainted with Dr. Barnett and other doctors and employees connected to the hospital. She contended that these relationships would not affect her ability to weigh that evidence fairly, and the court refused to strike her for cause shown.

The Kentucky Supreme Court in *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985), adopted the language of *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4 (1981), when it held that:

> [I]rrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses.

*Id.* at 407, 429 A.2d 4.

We believe this precedent roundly resolves the issue of the jurors' disqualification in favor of the appellants. The *Ward* holding renders immaterial the trial court's subsequent attempt to rehabilitate the first juror's impartiality by questioning her a second time.

As we mentioned in our outline of the facts, at the time Sylvia suffered the cardiopulmonary arrest the alarm on the heart monitor attached to her was either disconnected or inaudible. Appellants introduced evidence that this was a deviation from accepted nursing care standards. The appellees countered with testimony from other nurses at the hospital, as well as from Dr. Barnett, that the reason the heart monitor alarms were not utilized at the hospital was because they are unreliable and unnecessary. They testified that the alarms sounded for inappropriate monitor readings, and that the nurses watch the recovery room patients so constantly that the alarm systems are superfluous.

The appellants had planned to introduce evidence that would have shown that the hospital changed its policy regarding the alarms and began consistent utilization of them immediately after Sylvia's arrest. The appellees moved *in limine* to preclude the introduction of any such evidence, and the trial court sustained the motion. We believe that was erroneous in this case.

Appellees argue the traditional and accepted rule that evidence of subsequent remedial changes or precautionary measures is to be precluded. *See* Lawson, *Kentucky Evidence Law Handbook*, 2d.Ed., Sec. 2.30(A). Appellants argue that the proffered evidence should have been admitted under the exception to the general rule that allows such evidence for impeachment purposes. Lawson, *Id.* at 2.30(B). We agree with the appellants that the evidence was proper for admission in order to impeach the testimony of the witnesses hostile to the appellants.

Nurse Wolfe testified on direct examination by appellees' counsel that the alarms "go off so often unnecessarily." Nurse Pence testified on cross-examination by appellants' counsel that the alarms "went off for false readings," and that they "are distracting really, as far as taking care of patients." Appellee Barnett testified on cross-examination by appellants' counsel that "you have alarms on there that will be going off all the time, and you will spend all your time pushing the reset button."

This adequately demonstrates that the appellees were attempting to convince the jury that the alarms were not operative at the time of Sylvia's arrest out of consideration for the patients' best interest. We

therefore believe that appellees' motion *in limine* was improperly sustained, and that the appellants should have been allowed to put before the jury their impeachment evidence of subsequent use of the alarms. We add, of course, that an appropriate admonition from the court to the jurors that they not infer negligence from that evidence alone would have unquestionably been warranted.

■ Appellants also complain that the court erred during trial when it refused to permit counsel to read excerpts from the deposition of one of appellees' defense experts in order to show during cross-examination of another defense expert that the two experts disagreed about a critical issue.

Dr. Kenneth B. Graulich, expert witness for the appellees, was deposed prior to trial. Dr. John Sartini, another of appellees' experts, testified at trial. While cross-examining Dr. Sartini, appellants' counsel was leading up to a reading from Dr. Graulich's deposition to show inconsistency between the two expert opinions. A conference at the bench was requested before counsel had the chance. Appellees' counsel then informed the court that they no longer intended to examine Dr. Graulich at trial, and they objected to appellants' counsel reading from his deposition. The court, on its own initiative, informed appellants' counsel that if he read Dr. Graulich's deposition he must read it in its entirety. The practical effect of this ruling was a forced abandonment of this line of questioning since Dr. Graulich's deposition was one hundred pages long. We believe that the ruling was erroneous under CR 32.01.

CR 32.01 permits the reading of a portion of a deposition, and subpart (d) of the rule allows the opposing party the opportunity to require any other parts to be introduced for the sake of fairness. The right to require such additional portions to be introduced belongs to opposing counsel, and it is their responsibility to avail themselves to the right. Absent a call upon the court to observe CR 32.01(d), the party who makes the initial offering of a portion of a deposition should not be hindered by a *sua sponte* ruling to put so much as one more word into evidence. *See also Sullivan v.*

*Bowling,* Ky., 481 S.W.2d 83 (1972), (pertinent portions of two depositions of employees of plaintiff's former employer were erroneously excluded at trial).

Appellants next complain that the trial court erred when it admitted three exhibits.

■ First, during cross-examination of appellants' expert, appellees' attorney wrote on a piece of paper highlights of the testimony which accentuated appellees' theory of the case. These notes were authenticated by the witness as an accurate reflection of what he had said. The court admitted the notes as exhibits over appellants' objection. We agree with the appellant that this was error.

It is well established that such documents as maps, plans, and charts are proper candidates for exhibits to the jury. The form of the exhibit here in controversy is substantially different. A trial attorney's handwritten notes of selected portions of a witness' testimony are shrouded in a slanted subjectivity, regardless of the witness' authentication. Contrarily, maps and plans are free from this encumbrance. When given to a jury the latter educate; the former indoctrinate.

The harm of allowing counsel's notes to be taken into the jury room is worsened by the fact that when it is the court's imprimatur stamped upon the notes there is a high likelihood that a jury will be unduly impressed with an inordinate perception of their significance. Counsel should withhold summary of the evidence until closing argument. Closing arguments are not to be considered as evidence by the jury, and counsel's notes highlighting testimony should not be elevated to that status by embracing them as exhibits.

■ The next exhibit considered objectionable by the appellants was identified as "Guidelines for Standards of Care and Management Standards in the Post Anesthesia Care Unit," published by the American Society of Post Anesthesia Nurses. Appellants regard this document as a learned treatise, but we do not. It is more akin to the Public Safety Commission's standards considered by the court in *Vaught's Adm'x v. Kentucky Utilities Co.,* Ky., 296 S.W.2d 459 (1956). The court

found them to be helpful as a guide for measuring care. We regard the nurses' publication in a similar fashion, and see no error in its being admitted as an exhibit.

■ The third and final exhibit attacked by the appellants was a summary of nurse Sexton's recovery room experience. We perceive no error in making this document an exhibit based upon *Municipal Paving Co. v. Farmer*, Ky., 255 S.W.2d 618 (1953), which held that:

> [W]here a fact can be ascertained only by the inspection of numerous documents made up of many detailed statements, a summary of those documents is admissible if prepared and offered by a competent witness who has examined the documents and summarized the results. [Citations omitted.]

*Id.* at 620.

The hospital records from which the summary was made was made available to appellants prior to trial, and appellants had the opportunity on cross-examination to test the accuracy of the summary.

■ Next, appellees made a motion for leave of court to approach the physicians who had treated Sylvia. The court granted the motion. Appellants had intended to use these physicians as expert witnesses and as treating physicians.

Appellants say the order was improper under CR 26.02(4), which pertains to the scope of discovery of facts known and opinions held by expert witnesses. It allows this discovery by interrogatories. However, CR 26.02(4)(a)(ii) permits the court upon motion to allow "further discovery by other means." This language extends discretion to a trial court which encompasses the extent of the trial court's order permitting appellees' attorneys to approach the physicians and request an interview.

Appellants also objected to the motion on the ground that it violated the Interprofessional Code jointly adopted by the Kentucky Medical Association and the Kentucky Bar Association. The Code professes to be an ethical guide, not an authority binding the courts.

Appellants call attention to Section III B 4 of the Code and represent that section as prohibiting the physician from releasing "information" about a patient without the patient's prior, written authorization. The section does not use the word "information"; it uses the words "report or test." It does not discourage the court from granting leave to an attorney to merely approach the physician.

Appellants say Section V B 1 removes the traditional obligation of physician/patient confidence "only" in depositions. The section does remove the obligation in depositions, but does not state that then is the "only" time it is removed.

The order was not improper. It merely gave the court's permission to the appellees' attorneys to approach the treating physicians. No obligation was placed upon the physicians. They were free to react in any way dictated by their professional consciences, from fully discussing Sylvia's medical history and condition to abruptly slamming their office doors in the attorneys' faces.

Finally one argument remains. Appellants complain that the trial court erred in overruling their motion for an order compelling the personal attendance of a physician, and in quashing service of a subpoena on nurse Stewart. It was further error, appellants say, for the court to forbid pretrial discovery of these witnesses, and to disallow their testimony at trial.

The record indicates to us that appellants' problem with this subject arose largely because of timing. Trial of the case was imminent before the court was properly given a chance to consider appellants' request. Since we are reversing the judgment of the trial court and remanding this case for a new trial, appellants should have opportunity anew to procure desired evidence from the physician and nurse.

The judgment of the Boyle Circuit Court is hereby reversed and this cause remanded for a new trial consistent with this opinion.

All concur.