RENDERED:  MAY 12, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0579-MR

JEWISH HOSPITAL, AN ASSUMED
NAME OF JEWISH HOSPITAL & ST.
MARY'S HEALTHCARE, INC.; AND
KENTUCKYONE HEALTH, INC.                                    APPELLANTS

|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE MITCH PERRY, JUDGE |
|  | ACTION NO. 17-CI-000253 |

KAREN REDDINGTON,
INDIVIDUALLY; AND KAREN
REDDINGTON, AS EXECUTRIX OF
THE ESTATE OF DONALD PATRICK
REDDINGTON, SR.                                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE,
JUDGES.

THOMPSON, CHIEF JUDGE:  Jewish Hospital, an assumed name of Jewish

Hospital & St. Mary's Healthcare, Inc., and KentuckyOne Health, Inc.

("Appellants"), appeal from a judgment of the Jefferson Circuit Court entered on March 23, 2022, and from the circuit court's order denying Appellants' post-trial motions entered on April 29, 2022. Appellants argue that the circuit court erred in 1) failing to grant summary judgment; 2) giving the jury improper negligence and missing evidence instructions; 3) allowing the use of privileged documents contrary to the law of the case; and, 4) improperly allowing the jury to hear evidence of Appellants' subsequent remedial policy change. Appellants seek an opinion reversing the judgment on appeal and remanding the matter for a new trial. Having heard the oral arguments of counsel, and after careful review, we find no error and affirm the judgment on appeal.

## FACTS AND PROCEDURAL HISTORY

On April 29, 2016, Donald Reddington ("Mr. Reddington") had surgery at Appellants' hospital to repair a torn rotator cuff. After surgery, Mr. Reddington developed complications and was intubated. He was admitted to the intensive care unit ("ICU"). On May 10, 2016, Mr. Reddington received a tracheostomy and began to make some improvement.

About 10 days later, and based on his improvement, Mr. Reddington's treating physician, Dr. John Wesley McConnell, transferred Mr. Reddington to an intermediate care floor. Mr. Reddington's pulse oximetry was monitored every four hours.

On May 22, 2016, and while monitored by cardiac telemetry, Mr. Reddington's tracheostomy tube became dislodged and he began to asphyxiate. Mr. Reddington's primary room nurse, Rachel Ruppel, was in the cafeteria when the tracheostomy tube became dislodged. Ms. Ruppel would later state that she had previously handed off Mr. Reddington's care to nurse Val McGee. Ms. McGee denied that Ms. Reddington's care was handed off to her, and testimony was later adduced that Ms. McGee was with Ms. Ruppel in the cafeteria.

Sometime after Mr. Reddington's tracheostomy tube became dislodged, a cardiac alarm sounded at the nurses' station which was about 11 feet from Mr. Reddington's room. Nurse Angelique Kahn-Brown heard the alarm, and responded to Mr. Reddington's room. She discovered that the tracheostomy tube was dislodged, and observed that Mr. Reddington was not breathing and his skin was blue. Ms. Kahn-Brown called a "code blue" to summon immediate assistance for Mr. Reddington. At about this time, Ms. Ruppel received a text that Mr. Reddington's cardiac leads were off.

Medical personnel responded to the code blue and attempted to resuscitate Mr. Reddington with CPR and ventilation. Ms. Kahn-Brown initiated these procedures before the code blue personnel arrived. As no appropriate tracheostomy tube was available, a new tube had to be retrieved from Appellants' central supply. Mr. Reddington was re-intubated and resuscitated, but had suffered

a hypoxic brain injury due to a lack of oxygen. He never regained consciousness, was subsequently removed from life support, and died.

Several months later, Karen Reddington,[1] individually and as the executrix of the estate of Mr. Reddington ("Appellee"), filed the instant medical negligence action against Appellants in Jefferson Circuit Court. Appellee sought damages for Mr. Reddington's pain, suffering, and mental anguish, as well as for medical expenses, funeral costs, and loss of consortium. Protracted litigation followed, resulting in a jury trial conducted in February and March of 2022. The jury returned an award in favor of Appellee in the amount of $3,913,180.55. Appellants' post-judgment motions were denied, and this appeal followed.

## ARGUMENTS AND ANALYSIS

Appellants first argue that the Jefferson Circuit Court committed reversible error in failing to grant its motion for summary judgment. They assert that Appellee failed to produce any expert testimony related to medical causation, with Appellee instead arguing that its experts' opinions on standard of care breaches were sufficient. According to Appellants, Appellee's experts testified that they would not offer any opinion on causation at trial. At most, Appellants assert that Appellee's experts testified as to physician conduct, for which Appellants were not responsible. Though Advance Practice Registered Nurse

---

[1] Karen and Donald Reddington were married.

-4-

("APRN") Robert Rogers testified as to causation, Appellants argue that Rogers did not offer expert testimony to a reasonable degree of medical probability, and did not express an opinion that Appellants' conduct was the proximate cause of Mr. Reddington's death.  The focus of Appellants' argument on this issue is that without any sworn testimony on causation regarding Appellants' conduct, Appellee was forced to cite its expert disclosures as the sole source of expert opinion on causation.  Appellants argue that even when viewing the evidence in Appellee's favor, summary judgment was appropriate because Appellee did not offer any affirmative expert evidence relating to causation and Appellants' conduct.

In response, Appellee argues that Appellants failed to comply with Kentucky Rules of Civil Procedure ("CR") 76.12(4)(c)(v),[2] which requires at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner. Appellee notes that Appellants failed to identify in either the Notice of Appeal or its brief any written order denying its July 21, 2021 motion for summary judgment. Further, Appellee contends that even if Appellants identified in the record an order

---

[2] CR 76.12(4)(c)(v) was replaced by the Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4) effective January 1, 2023.  We will refer to these rules interchangeably as the context requires.

denying summary judgment, such an order would not be appealable because it was subsumed by the judgment.

Appellants have not complied with the former CR 76.12(4)(c)(v), which required,

> [a]n argument conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

Appellants' argument section of the brief does not contain a statement at the beginning with reference to the record showing whether each issue was properly preserved for review and, if so, in what manner.

"A brief may be stricken for failure to substantially comply with the requirements of these rules." RAP 31(H)(1). The rule requiring an argument section including a statement of preservation is a substantial requirement of RAP 32 encompassed by RAP 31(H)(1).

When a party fails to abide by the Rules of Appellate Procedure, we may choose "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App.

2010) (citation omitted); *see also Ford v. Commonwealth*, 628 S.W.3d 147, 153-55 (Ky. 2021).

It appears that either the Jefferson Circuit Court made no ruling on Appellants' summary judgment motion or, if it made the ruling, it was not designated in the appellate record. In either instance, as Appellants have not cited the circuit court's response, if any, to its motion for summary judgment, there is nothing for us to review. The duty rested with Appellants to insist upon a ruling, and the failure to do so constitutes a waiver of the motion. *Transportation Cabinet Bureau of Highways, Com. of Ky. v. Leneave*, 751 S.W.2d 36, 38 (Ky. App. 1988).

Per *Hallis*, *supra*, we have reviewed Appellants' argument on this issue for manifest injustice only. "Manifest injustice" requires a showing that a different result was probable, or that the error in the proceeding was of such magnitude as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 3-4 (Ky. 2006).

Appellants' motion for summary judgment centered on causation, *i.e.*, its claim that even when viewed in a light most favorable to Appellee, Appellee could not present sufficient expert testimony at trial to demonstrate that Appellants' negligence proximately resulted in Mr. Reddington's death. Appellee tendered expert witness disclosures in pre-trial proceedings, and these experts testified at trial in a manner sufficient to persuade the jury on Appellee's

negligence claim. Further, Appellants did not move for a directed verdict on causation at the close of Appellee's evidence nor the close of all of the evidence. Having closely examined the record and the law on this issue, we do not find that a different result was probable, nor that the purported error in the proceeding was of such magnitude as to be shocking or jurisprudentially intolerable but for the alleged error. *Martin*, *supra.* Accordingly, we find no manifest injustice.

Appellants next argue that the circuit court committed reversible error in improperly submitting Instruction No. 4 to the jury. This instruction stated:

> It was the duty of Jewish Hospital, by and through its employees, to establish and follow procedures regulating the administration of care to patients, including Donald Reddington, and to exercise the degree of care and skill ordinarily expected of a reasonable prudent hospital by and through its employees acting under similar circumstances.

Appellants argue that this instruction improperly placed two duties on it – one specific and one general; that is, 1) to create and follow procedures regulating the administration of care to patients, and 2) to exercise ordinary care. Appellants contend that there is no duty under Kentucky law to create and follow procedures relating to patient care. In support of this proposition, Appellants direct our attention to *Lake Cumberland Regional Hospital, LLC v. Adams*, 536 S.W.3d 683, 695 (Ky. 2017). Appellants assert that simple, "bare bones" instructions are

required under Kentucky law, and that Instruction No. 4 demanded more of Appellants than the law requires. On this basis, they request a new trial.

As with its first argument, Appellants failed to preserve this argument for appellate review as formerly required by CR 76.12(4)(c)(v). Again, our options are to ignore the deficiency and proceed with the review; to strike the brief or its offending portions; or, to review the issues raised in the brief for manifest injustice only. *Hallis*, *supra*. As it is clear from the record that Appellants challenged Instruction No. 4 below, and Appellee so acknowledges, sanctions for violating CR 76.12(4)(c)(v), which include striking Appellants' brief and dismissing his appeal, are not warranted. *See Baker v. Campbell County Board of Education*, 180 S.W.3d 479, 482 (Ky. App. 2005). Accordingly, we will consider this claim of error as if it were properly preserved.

The focus of Appellants' argument on this issue is its contention that the Jefferson Circuit Court erred in imposing upon Appellants a novel and improper duty to establish and follow patient procedures. We do not read *Adams*, *supra*, and the related case law as holding that such an instruction is improper. Rather than holding that an instruction on hospital policy or procedures is improper, *Adams* held that the plaintiff therein was not *entitled* to such an instruction.

*Humana of Kentucky, Inc. v. McKee*, 834 S.W.2d 711 (Ky. App. 1992), is instructive. In *McKee*, a teenage boy, by and through his parents, alleged that when he was an infant, Humana was negligent in failing to diagnose the child's treatable metabolic disorder via a PKU test which proximately resulted in a lifetime of disability. After the boy and his father were awarded a multimillion-dollar judgment, Humana argued on appeal that a jury instruction improperly set forth two duties – one to establish and follow procedures and another to exercise ordinary care.

In rejecting Humana's argument, a panel of this Court determined that the phrase "in establishing and following procedures" in the instruction did not create an additional duty, but merely qualified Humana's duty to exercise ordinary care. The Court said:

> Finally, Humana argues that Instruction No. 2b had the effect of demanding more of it than the law requires because it not only imposed a duty upon the hospital to exercise ordinary care in administering the PKU test, but it also imposed a duty upon the hospital to establish and comply with procedures regulating the administration of the test. However, we agree with the trial court that the phrase "in establishing and following procedures" in Instruction No. 2b did not impose a separate legal duty upon Humana but, rather, merely served as qualifying language which the court utilized in defining Humana's duty to exercise ordinary care. Moreover, we reject

Humana's argument that Instruction No. 2b violates the dictates of *Rogers v. Kasdan, supra,* in any respect.[3]

*Id.* at 722-23.

*McKee* stands for the proposition that instructional language addressing the duty to establish and follow procedures merely qualifies the underlying duty of ordinary care. Such language does not create a new and unwarranted duty contrary to established precedent. Instruction No. 4 contained qualifying language similar to that addressed in *McKee*, and did not create a new duty unsupported by the case law. We find no error.

Appellants' next claim of error centers on physical and electronic records of Mr. Reddington's cardiac function recorded in the minutes leading up to and during the code blue event. In addition to appearing on monitors, Mr. Reddington's cardiac function was recorded electronically in his hospital room, at the nurse's station, and in a remote telemetry unit. Appellants' code sheet also had a space to preserve cardiac rhythm strips. Multiple lay and expert witnesses would later testify that common practice or policy was to print and/or electronically preserve such records after a code blue in order to memorialize the event. The

---

[3] *Rogers v. Kasdan*, 612 S.W.2d 133, 136 (Ky. 1981), stated that a jury instruction "should not contain an abundance of detail, but should provide only the bare bones of the question for jury determination. This skeleton may then be fleshed out by counsel on closing argument."

recordings at issue, however, were not retained by Appellants, and Appellants'

failure to retain the records became an issue at trial.

At the close of the proceedings, the Jefferson Circuit Court gave the

jury Instruction No. 3, a spoliation instruction, which stated:

> If you find from the evidence that the cardiac rhythm
> strips or records should have been preserved for the
> period immediately prior to and during Mr. Reddington's
> code event, and if you further find from the evidence that
> Defendant, Jewish Hospital, intentionally and in bad faith
> lost or destroyed the cardiac rhythm strips or records, you
> may, but are not required to, infer that the information
> recorded in the cardiac rhythm strips would be, if
> available, adverse to Defendants and favorable to the
> Plaintiff.

Appellants argue that by issuing the Instruction No. 3, the circuit court

committed reversible error because, 1) no documents were missing "utterly without

explanation" as addressed in *University Medical Center, Inc. v Beglin*, 375 S.W.3d

783, 790 (Ky. 2011), *as modified on denial of reh'g* (Mar. 22, 2012); 2) Appellants

were not on notice that the documents were relevant to any litigation when the

records were not retained, which is consistent with Appellants' customary retention

policy; and, 3) there was no evidence of bad faith.

*Beglin* does not support Appellants' claim of error on this issue. In

*Beglin*, a jury determined that University Hospital was negligent, by and through

its employees, in causing the death of Jennifer Beglin. The jury awarded Beglin's

estate over $9,000,000 in compensatory and punitive damages. On appeal, the

hospital argued that the trial court's spoliation instruction was erroneous. That

instruction stated:

> If you find from the evidence that an incident report was in fact prepared by Nurse Barbara Cantrell recording material information about Mrs. Beglin's surgery, and if you further find from the evidence that University Medical Center, Inc. d/b/a University of Louisville Hospital, intentionally and in bad faith lost or destroyed the incident report, you may, but are not required to, infer that the information recorded in the incident report would be, if available, adverse to University Medical Center and favorable to the plaintiffs.

The Kentucky Supreme Court determined that the spoliation instruction in *Beglin*

was proper. The Court stated that,

> [t]his remains the approved instruction in both criminal and civil cases. *See Monsanto Co. v. Reed*, 950 S.W.2d 811, 815 (Ky. 1997) ("Where the issue of destroyed or missing evidence has arisen, we have chosen to remedy the matter through evidentiary rules and 'missing evidence' instructions.") All agree that the *Sanborn*[4] instruction accurately sets forth the elements necessary to permit a jury to draw an adverse inference from missing evidence.
>
> The text of the instruction further demonstrates two important factors relevant to our review. First, the instruction contemplates that the jury will engage in fact-finding ("*If you find from the evidence . . .*"), thereby implying that, like any other issue, if there is a factual dispute in relation to the issue, the jury will resolve the disagreement. This obviously implies that, under our law, the trial court does not make any final and

---

[4] *Sanborn v. Commonwealth*, 754 S.W.2d 534 (Ky. 1988), addressed the form for a missing evidence instruction.

conclusive factual determination upon the elements of a missing evidence instruction. Second, the adverse inference portion of the instruction is optional ("*you may, but are not required, to infer . . .*"). The approved instruction does not impose upon the jury a duty to draw the adverse inference even when it believes the evidence was intentionally disposed of.

As a final note, the instruction did not require the jury to affirmatively indicate in the jury verdict forms its findings or determinations in relation to the instruction. We therefore do not know if the jury found for or against University Hospital under the instruction and, consequently, whether it had any impact at all on the verdicts. It is possible that the jury concluded that the report was lost innocently, and did not hold the disappearance of the report against University Hospital.

*Beglin*, 375 S.W.3d at 788 (emphasis in original) (footnote omitted).

Instruction No. 3, now before us, closely mirrors the instruction in *Beglin.* Like the *Beglin* instruction, Instruction No. 3 contains the same or similar "[i]f you find from the evidence" and "you may, but are not required to, infer" language. And as with the *Beglin* instruction, Instruction No. 3 did not require the jury to make a "yes" or "no" response, but allowed it to make or not make an inference from the evidence. Per *Beglin*, we are not persuaded by Appellants' argument that Instruction No. 3 was erroneous and requires a new trial. Appellants' assertions that they were not on notice that the documents were relevant to any litigation when they were not retained, and that they did not act in bad faith, do not alter that conclusion.

-14-

Appellants' next argument is that the circuit court erred in allowing the use of privileged documents at trial contrary to the law of the case. During the course of litigation, Appellants sought and received a writ of prohibition barring Appellee from entering Appellants' root-cause analysis report ("RCA") into evidence. *Jewish Hospital v. Perry*, 626 S.W.3d 509 (Ky. 2021). The RCA process was initiated several weeks after Mr. Reddington's death by then interim risk manager, Melanie Woodring, after it became apparent that Appellee might file a lawsuit. A group of hospital personnel, including Ms. Woodring, the Chief Medical Officer, the Director of Nursing, and the Assistant Nurse Manager – together referred to as the "Code E Team" – evaluated the care received by Mr. Reddington, reviewed the professional competency of hospital staff, and determined whether changes in care were warranted. Appellants argue that the circuit court improperly allowed evidence to be admitted at trial in violation of the writ.

Again, Appellants have not preserved this matter for appellate review in the manner required by the former CR 76.12(4)(c)(v). *See Hallis*, *supra*, for the reasons why compliance with the briefing rules is not merely a convenience to the Court, but is a necessity for carrying out the ends of justice. Per *Hallis*, we will review this claim of error for manifest injustice.

-15-

Appellants direct our attention to Kentucky Revised Statute ("KRS")

311.377(2), which states:

> At all times in performing a designated professional
> review function, the proceedings, records, opinions,
> conclusions, and recommendations of any committee,
> board, commission, medical staff, professional standards
> review organization, or other entity, as referred to in
> subsection (1) of this section, shall be confidential and
> privileged and shall not be subject to discovery,
> subpoena, or introduction into evidence, in any civil
> action in any court, including but not limited to medical
> malpractice actions . . . . The confidentiality and
> privilege protections of this subsection shall only be
> available to a person or entity that attests to participating
> in a patient safety and quality improvement initiative[.]

Appellants argue that per KRS 311.377(2) and the Supreme Court's writ of

prohibition in *Perry*, *supra*, that the Jefferson Circuit Court improperly admitted

into evidence at trial information contained in the RCA report, and/or related

information from Appellants' Incident Report and QRS Alert.[5] The Incident

Report was completed by nurse McGee about one day after the code blue event

and served as a basis for the subsequent physician peer review. Appellants assert

that all information contained in or relating to the RCA report, Incident Report, and

QRS Alert, as well as any related witness testimony, was privileged and should not

have been admitted at trial. While acknowledging that none of the privileged

---

[5] The writ of prohibition rendered by the Kentucky Supreme Court in *Perry*, *supra*, barred only the admission of the RCA. Appellants state that a QRS Alert is a policy change.

documents were admitted into evidence, Appellants assert that the circuit court improperly allowed into evidence certain witness testimony which paralleled the content of the privileged documents.

In addition to not preserving this argument for review as required by the former CR 76.12(4)(c)(v), Appellants do not cite or otherwise quote any specific testimony it finds objectionable. No specific rulings rendered by the circuit court at trial, if any, are cited or preserved. Rather, Appellants provide several footnotes in which they claim that privileged information was improperly revealed at trial, but no specific testimony is quoted or cited therein.

Appellants direct our attention to motions *in limine* filed about two months prior to trial, but these are not preserved and not addressed in the Notice of Appeal. Further, Appellants acknowledge that none of the purportedly privileged documents were admitted into evidence at trial.

As noted above, "manifest injustice" requires a showing that a different result was probable, or that the error in the proceeding was of such magnitude as to be "shocking or jurisprudentially intolerable." *Martin*, 207 S.W.3d at 3-4. Based on the entirety of the record, including the uncontroverted testimony regarding the events leading up to and including the code blue and Mr. Reddington's subsequent death, we do not conclude that the result of the

-17-

proceeding would have been different but for the alleged error, nor that the error was shocking or jurisprudentially intolerable.

Lastly, Appellants argue that the QRS Alert was inadmissible by operation of Kentucky Rules of Evidence ("KRE") 407, which states:

> When, after an event, measures are taken which, if taken previously, would have made an injury or harm allegedly caused by the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

This argument parallels Appellants' preceding argument. It was not preserved for review, and Appellants acknowledge that the QRS Alert document was not entered into evidence. We find no error.

## CONCLUSION

Appellants were not entitled to summary judgment, and the circuit court did not err in its negligence and missing evidence instructions. We find no basis for concluding that the circuit court improperly admitted privileged documents into evidence, nor that any testimony was violative of the writ of prohibition. For these reasons, we affirm the March 23, 2022 judgment of the Jefferson Circuit Court, and April 29, 2022 order denying post-judgment relief.

-18-

ECKERLE, JUDGE, CONCURS.

CENTRULO, JUDGE, CONCURS IN RESULT ONLY AND FILES SEPARATE OPINION.

CENTRULO, JUDGE, CONCURRING IN RESULT:  Respectfully, I concur in result only.  I believe that the alleged errors were sufficiently referenced for our appellate review.  Our appellate court rules require a reference to the location in the record at the beginning of each argument.  The references herein were largely in footnotes and/or the appendix, but I believe that was sufficient to allow our full review.

However, I agree with the majority that the summary judgment denial was not properly preserved below as there was no ruling ever entered on that motion.  Moreover, as to the other alleged errors, those are all matters that rest within the discretion of the trial judge.  Appellant claims the trial court erred in placing two duties on the hospital with the wording of Instruction No 4.  However, the trial court considered arguments on the instructions by both parties, reviewed case law and pattern instructions, and clearly considered the evidence presented over nine days of trial.  The trial court then instructed the jury in keeping with the standard jury instruction manuals and with medical malpractice case law.  I agree with appellant that the better language would have been "that the hospital has a duty IN establishing and following procedures" rather than the use of AND in

setting forth the duty of ordinary care. However, it did not rise to the level of an abuse of discretion.

Similarly, regarding the spoliation instruction given to the jury, we are limited in our review on appeal. Trial courts are vested with wide discretion in deciding what admonitions and instructions to the jury are appropriate under the evidence and attendant circumstances. Our standard of appellate review is for abuse of discretion. As the majority noted, *University Medical Center v Beglin,* 375 S.W.3d 783 (Ky. 2011), is dispositive on this issue, and the *Beglin* court opted for a flexible standard that grants wide discretion to the trial court. *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 730 (Ky. 2020). Similarly, the appellant cannot prevail on its argument as to improper references to subsequent remedial measures as the trial court gave the proper admonition to the jury consistent with *Davenport By & Through Davenport v. Ephraim McDowell Memorial Hospital, Inc.*, 769 S.W.2d 56 (Ky. App. 1988).

I turn now to the argument on admissibility of privileged information (as determined by the Supreme Court earlier in *Jewish Hospital v. Perry*, 626 S.W.3d 509 (Ky. 2021)). On this point, Jewish Hospital again did **not** obtain a ruling on its motion *in limine* pertaining to two documents, the Incident Report and the QRS Alert. Instead, the trial court passed consideration of admissibility of those items until trial. At trial, the trial court did not allow the documents to be

admitted at trial, but did allow testimony from several witnesses regarding facts contained in those two documents. That testimony was without any contemporaneous objection, and that testimony did not violate the Supreme Court's ruling in *Perry*. The text of that opinion makes it clear that their review was limited to the admissibility of a root cause analysis report only.

For the foregoing reasons, I concur with the Opinion affirming the judgment which upholds the jury verdict herein.

BRIEFS FOR APPELLANTS:

B. Todd Thompson
Eleanor M. B. Davis
Joseph A. Wright
Louisville, Kentucky

ORAL ARGUMENTS FOR
APPELLANTS:

Joseph A. Wright
Louisville, Kentucky

BRIEF FOR APPELLEE:

Jack Conway
Louisville, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

ORAL ARGUMENTS FOR
APPELLEE:

Jack Conway
Louisville, Kentucky