BOWLING GREEN MUNICIPAL
UTILITIES, Appellant,

v.

ATMOS ENERGY CORPORATION
d/b/a Western Kentucky Gas,
et al., Appellees,

and

James Johnson, et al., Appellants,

v.

Bowling Green Municipal Utilities,
et al., Appellees,

and

Scotty's Contracting & Stone, Appellant,

v.

Atmos Energy Corporation d/b/a Western
Kentucky Gas, et al., Appellees,

and

GRW Engineers, Inc., Appellant,

v.

Atmos Energy Corporation d/b/a Western
Kentucky Gas, et al., Appellees.

Nos. 97–SC–300–DG, 97–SC–312–DG,
97–SC–302–DG, 97–SC–306–DG.

Supreme Court of Kentucky.

April 22, 1999.

As Amended April 27, 1999.

Timothy L. Mauldin, Bell, Orr, Ayers & Moore, Bowling Green, Kentucky, for appellants Bowling Green Municipal Utilities.

Charles E. English, Jr., English, Lucas, Priest & Owsley, Bowling Green, Kentucky, for appellees Atmos Energy Corporation d/b/a Western Kentucky Gas, et al.

Gregory Y. Dunn, Hensley, Dunn, Ross & Howard, Horse Cave, Kentucky, for West American Insurance Company, Brewer T. Jones, and Margaret P. Jones.

O. Lee Cave, III, Carrie J. Kanani, Debbie D. Sandler, Clark, Ward & Cave, Louisville, Kentucky, for Travelers Insurance Company.

Benjamin S. Harralson, Louisville, Kentucky, for Southern United Medigroup, Inc.

John D. Cole, Matthew J. Baker, Cole, Moore & Baker, Bowling Green, Kentucky, for Scotty's Contracting and Stone, Inc.

Mark Scott Riddle, Daniel Potts Cherry, Greenebaum, Doll & McDonald, PLLC, Louisville, Kentucky, for GRW Engineers, Inc.

Jerry Safford, Safford, Lanphear & Simpson, Bowling Green, Kentucky, for appellants James Johnson, et al.

STEPHENS, Justice.

These cases arose out of a natural gas explosion and resulting fire that occurred on January 19, 1994 in Bowling Green, Kentucky. Four houses were destroyed, along with appreciable personalty, and two individuals suffered physical injuries.

Initially, only Atmos Energy Corporation, d/b/a Western Kentucky Gas (WKG), was named as defendant. By various impleaders, Bowling Green Municipal Utilities (BGMU), Scotty's Stone and Contracting (Scotty's) and GRW Engineering (GRW) were added as defendants. Over the objection of the plaintiffs, the cases were consolidated for trial. Plaintiffs conceded that the claims against WKG were identical, other than the type and amount of damages sought, to the claims against the three other defendants.

Following voir dire, the four defendants were each granted four peremptory challenges for a total of sixteen. Counsel for the seven individual plaintiffs (who had filed four separate actions) was granted twelve peremptory challenges. Counsel for the two plaintiff insurance companies were granted two peremptory challenges each. This resulted in both the plaintiffs and defendants having sixteen peremptory challenges. WKG objected to the allocation of sixteen strikes because of an alleged violation of CR 47.03, in view of there being no antagonistic interests among plaintiffs. The objection was overruled.

The jury subsequently rendered a verdict, solely against WKG, in the amount of $239,287.47 in compensatory damages for injuries to the real estate, the personal property, and for harm to individuals. In addition, a total

of \$450,000.00 in punitive damages was awarded to the plaintiffs.[1]

WKG appealed to the Court of Appeals, which reversed and remanded this case to the circuit court. A unanimous panel ruled (1) that it was error for the trial court to grant an additional allocation of peremptory challenges·to the plaintiffs, in view of CR 47.03 and a failure to show antagonistic interests among the plaintiffs; (2) that there was insufficient evidence against WKG to justify an award of punitive damages, and that a directed verdict for WKG should have been granted by the trial court on that claim.

The Court of Appeals, in its remand, directed that the case be retried against all four defendants, even though the jury had exonerated all defendants, *except WKG*, against whom it found sole fault and assessed all damages. Although the Court of Appeals discussed other issues, in view of our disposition of this case, it is not necessary to discuss them here.

Appellants, who are the plaintiffs and subrogees below, urge that the Court of Appeals erred in deciding that the trial court's allocation of extra peremptory challenges constituted a violation of CR 47.03 and assert that such decisions should be left up to the "judicial discretion" of that judge. Further, appellants urge that the Court of Appeals erred by ruling, in effect, as a matter of law, that there was insufficient evidence to submit the question of punitive damages to the jury. In view of our decision on this issue, other arguments relative to punitive damages need not be decided.

On cross-appeal, the defendants BGMU, Scotty's and GRW, urge that the Court of Appeals remand of the case for a retrial against them (in addition to WKG) was error since the jury found no negligence as against them.[2]

## I. DID THE COURT OF APPEALS ERR WHEN IT RULED THAT THE NUMBER OF PEREMPTORY CHALLENGES GRANTED BY THE TRIAL COURT TO THE PLAINTIFFS VIOLATED CR 47.03?

All of the plaintiffs had identical claims against WKG, Scotty's, BGMU, and GRW. None of the plaintiffs filed cross-claims and none chose to file suits against additional defendants. The majority of the plaintiffs were represented by the same attorney. In spite of this situation, the individual plaintiffs were allowed to exercise a total of twelve peremptory strikes. Moreover, the two insurance company plaintiffs received two peremptory challenges. Thus, there was a total of sixteen peremptories on the plaintiffs' side.

CR 47.03(1), in part, states: "In civil cases each opposing side shall have three peremptory challenges, *but co-parties having antagonistic interests shall have three challenges each*" (emphasis added). The trial judge, in granting the additional challenges, did not make a finding that there were either antagonistic interests or no antagonistic interests. He did not discuss this issue but simply stated that the plaintiffs and defendants should have an equal number of peremptory challenges as a matter of fairness. Unfortunately, however, the exceptions of CR 47.03 only permit additional strikes when the interests of the parties are antagonistic or when extra jurors are called (not applicable here). No other exceptions are permitted.

In *Kentucky Farm Bureau v. Cook,* Ky., 590 S.W.2d 875 (1979), the trial court allowed the plaintiff three peremptory challenges and the defendants nine, even though the defendants took identical trial positions. We held that CR 47.03 "is a defined mechanism and does not depend upon the exercise of judicial discretion." *Id.* at 877. This categorization of CR 47.03 was reiterated in

---

1. The breakdown of these awards to the individual plaintiffs is not relevant to the decision of this case. Moreover, two insurance companies were parties, claiming subrogation. Their role is also not relevant to this opinion.

2. Appellee/cross-appellant, GRW also claims that it should have been awarded a directed verdict since there was no expert testimony showing it, as an engineer, was negligent. In view of our decision, it is not necessary to discuss this issue.

*Thomas v.. Commonwealth*, Ky., 864 S.W.2d 252 (1993): "The rules specifying the number of peremptory challenges are not mere technicalities, they are substantial rights and are to be fully enforced." *Id.* at 259.

■ Violations of CR 47.03, in order to be subject to appellate reversal, need not show actual prejudice. A simple violation suffices. "To show actual prejudice, the complaining litigant would be required to discover the unknowable and to reconstruct what might have been and never was, a jury properly constituted after running the gauntlet of challenge performed in accordance with the prescribed rule of the game." *Cook*, 590 S.W.2d at 877. *See also Davenport v. Ephraim McDowell Memorial Hospital*, Ky. App., 769 S.W.2d 56, 59 (1988).

Since no antagonistic interests were shown, since the *sole* reason given by the trial judge was not within the written purview of the rule, and since this Court has elevated the provision of CR 47.03 to the level of being a substantive right, we must declare the actions of the trial court to be reversible error, as did the Court of Appeals. This part of the Court of Appeals' decision is affirmed.

## II. DID THE COURT OF APPEALS ERR IN RULING THAT THERE WAS NOT SUFFICIENT EVIDENCE, AS A MATTER OF LAW, TO JUSTIFY THE AWARD OF PUNITIVE DAMAGES?

■ The Court of Appeals, after examining the evidence relative to the propriety of allowing punitive damages, declared that under the then-existing provisions of KRS 411.184, such damages were improper. The Court of Appeals simply could find no evidence of malice that would have justified an award of punitive damages, thus reversing the jury verdict.

To begin our analysis, we note that the constitutionality of KRS 411.184 was not challenged at the trial. This statute, the so-called "Tort Reform" Act, became effective in 1988, and was in effect both when the accident occurred and when this case was tried. On August 27, 1998, we declared KRS 411.184 to be unconstitutional since it changed the common law standard of proof for awarding punitive damages when our present constitution was adopted, thus violating the jural rights doctrine. *Williams v. Wilson*, Ky., 972 S.W.2d 260 (1998). Since the plaintiffs below did not challenge the constitutionality of the statute at trial and since the statute was in effect at the time of the accident and the trial, we will review the question under the terms of the statute as it then existed. *Burns v. Level*, Ky., 957 S.W.2d 218, 222 (1998).

What we do, in this decision, is to determine if the evidence presented by the plaintiffs, relative to the imposition of punitive damages, met the standard of proof required by KRS 411.184. What we do not do is to review the evidence under the standards adopted by this Court, prior to the enactment of the statute. The applicable provision KRS 411.184 provides: "A plaintiff shall receive punitive damages only upon proving, *by clear and convincing evidence*, that the defendant from whom such damages are sought acted toward the plaintiff with *oppression, fraud or malice.*" KRS 411.184(2) (emphasis added). This statute clearly preempts the common law standard of gross negligence. *Horton v. Union Light, Heat & Power Company*, Ky., 690 S.W.2d 382, 388–89 (1985). *See also, Williams*, 972 S.W.2d at 262–265.

■■ No evidence was introduced by the plaintiffs that the defendant, WKG, acted fraudulently. Moreover, no evidence was introduced to the effect that the defendants oppressed the plaintiffs. Therefore, the determinative question is whether the plaintiffs established malice on the part of WKG. Malice, as defined by KRS 411.184(1)(c) is "either conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the ·defendant *with both a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in death or bodily harm* " (emphasis added). Malice, therefore, may be characterized as intentionally cruel and unjust or intentionally injurious behavior. It "may be implied from outrageous

conduct, and need not be expressed so long as the conduct is sufficient to evidence conscious wrongdoing." *Fowler v. Mantooth,* Ky., 683 S.W.2d 250, 252 (1984). We turn now to an examination of the facts in order to determine whether WKG's conduct was flagrantly indifferent to the plaintiffs' safety and whether WKG knew that its conduct would result in the personalty and realty destruction caused by the gas leak.

On January 16–19, 1994, the weather in Bowling Green hovered between zero degrees and minus nine degrees. A layer of ice and snow covered the ground, preventing the leaking gas in the fractured gas main from harmlessly escaping into the atmosphere as would normally have been the case. Instead, it migrated from the fracture site along utility service lines into the crawl spaces of the four houses where it was ignited. At trial, much contradictory evidence was presented regarding the cause of the gas main fracture. There were conflicting reports as to whether there had been a gas leak in the neighborhood immediately prior to the explosion. WKG denied notice of a previous gas leak and no testimony was presented indicating that WKG had notice of a previous gas leak. An investigation of the accident revealed that the fracture could have been caused by either installation, leakage from water lines years before or corrosion. There was testimony that construction of a "cut" in the street by an unknown third party damaged the pipe (there were equipment teeth marks on it), but that the freezing temperatures were the determinative factor causing the gas main to fracture. There was also evidence that the leak might have been caused by improper repair of the pipe by either WKG or an unknown third party. WKG disclaimed ever having repaired the pipe and the plaintiffs were unable to document that it had done so. Finally, the Public Service Commission's investigation of the incident revealed that the damage had been caused by an unknown third party.

While this summary of the evidence is not exhaustive, we have fully examined the record with respect to the "malice" requirement of the statute. That the accident happened is a certainty. The jury found *only* the gas

supplier, WKG, to be negligent and it exonerated BGMU, GRW Engineering, and Scotty's. The evidence that would place liability for punitive damages on WKG is not only unclear and speculative, but falls far short of showing "flagrant indifference" to the plaintiffs. The evidence presented to the jury was insufficient to allow it to form a belief that WKG willfully disregarded its duty to either properly repair the gas main or replace it. The evidence showed that the gas pipe burst suddenly and without warning due to the extremely cold temperatures. No evidence showed that the gas line had leaked for an extended period of time and that WKG had disregarded the danger or failed to discover the leak. WKG was not informed of any problems concerning the possible leak until the date of the incident. Furthermore, there was no evidence showing that WKG had caused the mechanical damage to the pipe or that it was aware that such damage had occurred. In summary, the evidence certainly does not show "subjective awareness" that WKG's conduct would result in death or bodily harm to the plaintiffs. KRS 411.184(1)(c). The Court of Appeals came to that conclusion, and we concur. On retrial the issue of punitive damages will not be relitigated. *Scuddy Mining Co. v. Couch,* Ky., 295 S.W.2d 553, 554 (1956).

The Court of Appeals is affirmed on this point.

## III. DID THE COURT OF APPEALS ERR IN REMANDING THE CASE FOR RETRIAL ON THE ISSUES OF LIABILITY AND COMPENSATORY DAMAGES AGAINST ALL DEFENDANTS, INCLUDING THOSE THREE WHICH WERE FOUND FREE OF LIABILITY BY THE JURY?

■ The jury verdict specifically exonerated Scotty's, BGMU, and GRW from all liability and placed the entire fault on WKG. The Court of Appeals, following its decision on the CR 47.03 and punitive damages issues, remanded the case for a retrial on liability and compensatory damages against *all four original defendants.* The Court of Appeals did not discuss the issue of whether the jury

verdict in favor of the three defendants prohibited a retrial against them—it simply said, "This case is remanded for new trial on the issues of liability and compensatory damages against *all defendants*" (emphasis added).

Those three original defendants, Scotty's, BGMU and GRW, appealed this part of this decision of the Court of Appeals. The jury exonerated Scotty's, BGMU and GRW from any liability. The jury found, as a matter of fact, that these three defendants were not guilty of any negligence that led to the plaintiffs' injuries. The plaintiffs did not appeal, and thus, the issue decided by the Court of Appeals as to these three defendants was not even properly before it.

▮ As we stated in *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980), this Court strongly favors the limiting of retrials, except when an injustice would result. "[A] party who has already had his day in court as to a particular issue may not have another opportunity to relitigate the same point unless a partial new trial will result in a miscarriage of justice." *Id.* at 146 (citing *Scuddy Mining Co.*, 295 S.W.2d at 554).

Since the plaintiffs did not appeal the verdict in favor of these three defendants, they cannot now be heard. Although a retrial is ordered on the basis of the violation of CR 47.03, since the issue of liability has been determined, we do not believe that the violation of CR 47.03 affected the rights of WKG as a co-defendant. The jury heard the proof and made its decision. Even though the jury was chosen in violation of CR 47.03, fundamental fairness dictates that since all evidence as to liability, including cross claims of WKG and the three other defendants was heard and ruled upon by this jury chosen in violation of the defendants' rights, the matter should not be relitigated.

Because we have decided this issue in this manner, the other issues raised by GRW need not be discussed. The Court of Appeals is reversed in part and affirmed in part. The case is remanded to the trial court with direction to retry the case against only WKG on the issue of liability and compensatory damages.

COOPER, GRAVES, JOHNSTONE, and STUMBO, J.J., concur.

LAMBERT, C.J., dissents in a separate dissenting opinion.

WINTERSHEIMER, J., joins this dissenting opinion.

LAMBERT, Chief Justice, dissenting.

With regard to the majority's conclusion that there was not sufficient evidence as a matter of law for an award of punitive damages, I respectfully disagree. The jury awarded the plaintiffs $450,000 in punitive damages. The Court of Appeals reversed, holding that there was insufficient evidence against WKG, and that the trial court should have granted a directed verdict for WKG on the punitive damages claim.

The general rule is that an appellate court should not disturb a jury verdict and substitute its judgment without some legally compelling reason. *Kroger Co. v. Willgruber*, Ky., 920 S.W.2d 61 (1996). As propounded in *Horton v. Union Light, Heat & Power Co.*, Ky., 690 S.W.2d 382 (1985), in negligence cases, the jury verdict resolves any conflict in the testimony and any reasonable inferences to be drawn therefrom must be allowed in favor of the prevailing party. An appellate court must not substitute its findings of fact for those of the jury if there is evidence to support those findings.

Evidence was presented at trial from which the jury could believe, and clearly did believe as shown by its verdict, that the gas pipeline was damaged and ineffectively repaired to such an extent that WKG should have known that an explosion was reasonably foreseeable. Testimony was offered that a WKG representative was the only person who attempted to tape or otherwise repair the subject pipe during the 1978 water main project; that the pipe had been damaged and ineffectively repaired, and that the pipe was dented to such an extent that it should have been replaced rather than repaired. Testimony was offered that a damaged pipe nearby had been replaced in 1981 but the pipe at issue here, also experiencing leaks caused by corrosion, had not been replaced. The jury heard testimony that major damage had oc-

curred to the subject pipe during a 1992 sewer project, at which time the pipe was exposed to dynamite blasting, and that this damage had been repaired by WKG.

Residents in the area claimed to have reported to WKG the smell of gas approximately six months before the explosions and then again several days immediately preceding the explosions. WKG allegedly investigated the odor and pronounced all to be well. Evidence was heard that holes had been drilled along the gas line in front of the destroyed homes, possibly to allow gas from corrosion leaks to escape into the atmosphere until the gas line could be repaired. Of course, snow and ice on the ground prevented the escape of leaking gas, not an unforeseeable circumstance in Bowling Green in January.

In my view, the foregoing evidence was sufficient to submit the issue of punitive damages to the jury. Even under the standard in KRS 411.184(2), applicable until it was declared unconstitutional by this Court in *Williams v. Wilson*, Ky., 972 S.W.2d 260 (1998), malice may be inferred when there appears to have been outrageous conduct or flagrant indifference to the rights of others. I believe the required standard was met in this case. Accordingly, I respectfully dissent.

WINTERSHEIMER, J., joins this dissenting opinion.