**T. Greg SOMMERKAMP, M.D., Appellant,**

v.

**Susan R. LINTON (Roberts), Appellee.**

**Florence Medical Arts, Inc., Appellant,**

v.

**Susan R. Linton (Roberts), Appellee.**

**E. Douglas Baldridge, M.D., Appellant,**

v.

**Susan R. Linton (Roberts), Appellee.**

No. 2001–SC–0431–DG, 2001–SC–0438–DG, 2001–SC–0442–DG.

Supreme Court of Kentucky.

Sept. 18, 2003.

**813**

William T. Robinson III, Luann Devine, Greenebaum Doll & McDonald PLLC, Covington, Counsel for Appellant T. Greg Sommerkamp, M.D.

Philip Taliaferro III, Taliaferro & Mehling, Alice Gailey Keys, Robert W. Carran, Covington, Counsel for Appellant, E. Douglas Baldridge, M.D.

Eric C. Deters, Eric C. Deters and Associates, Fort Mitchell, Counsel for Appellee.

Mark G. Arnzen, Mary K. Molloy, Arnzen & Wentz, PSC, Covington, Counsel for Appellant Florence Medical Arts, Inc.

Opinion of the Court by Justice
WINTERSHEIMER.

This appeal is from a decision of the Court of Appeals which reversed a judgment based on a jury verdict for the defense in a medical malpractice action and remanded the case for a new trial.

The principal issue is whether the interests of the various appellants in the medical malpractice action against them should be considered antagonistic for the purpose of CR 47.03 and, therefore, entitle them to separate peremptory challenges.

Other issues raised by Sommerkamp are whether principles of comparative negligence and apportionment obviate the need to file cross-claims against individuals who have already been made parties to the action where independent acts of negligence are alleged; whether the Court of Appeals erred in concluding that the absence of cross-claims weighed in favor of a finding of an absence of antagonistic interests; and whether decisions from other jurisdictions support a conclusion in this case that each defendant should be treated separately for peremptory challenges.

Other issues framed by Florence Medical Arts, Inc., are whether the Court of Appeals substituted its judgment for that of the trial court in determining whether antagonistic interests exist for purposes of peremptory challenges in the absence of an abuse of discretion; and whether the Court of Appeals incorrectly applied CR 47.03 and the relevant case law.

Other points presented by Baldridge include whether the codefendants shared a common theory of the case and whether the Court of Appeals' reversal on such grounds was erroneous; whether the Court of Appeals conclusion that the finding of liability on the part of one of the defendants would not necessarily relieve the others from liability is erroneous; whether the determination that the co-appellants treated Linton for one elusive ailment is erroneous; whether considering the relevant factors at the time of jury selection, the defendants had antagonistic interests; and whether the decision of the circuit court was clearly erroneous, and therefore suitable for reversal by the Court of Appeals.

Linton responds that where co-parties take identical trial positions and share the same theory of the case, their interests are not antagonistic and they are not entitled to additional peremptory challenges. She asserts that co-defendants who do not file cross-claims and share the same theory of the case are not antagonistic and that Kentucky apportionment law does not make co-defendants inherently antagonistic. Linton also claims that the defendants created a community of interests by their actions giving rise to the lawsuit and by failing to file cross-claims at trial. Finally, she asserts that the Court of Appeals properly reviewed the decision of the trial court.

*Facts*

On December 28, 1992, Susan Linton, now Susan Linton Roberts, developed pain

in her left forearm at work. From December 1992 through June 1993, physicians at Florence Medical Arts, Inc., treated her with medication, physical therapy and arm splints, but her pain persisted. Subsequently, they referred her to Dr. T. Greg Sommerkamp, a hand surgeon, for examination and consultation. He concluded that she suffered from overuse tendonitis of the left forearm and advised her to continue the treatments prescribed by Florence Medical Arts. Dr. Sommerkamp also scheduled Linton for an EMG nerve study with a neurologist on June 14 and scheduled a return visit to his office for June 21.

During the night of June 12, 1993, Linton's pain and discomfort increased in her forearm. She notified Florence Medical Arts of her condition the following day and was told to come in the next morning. At that time, she was examined and her condition was found to be essentially normal. The examining physician advised Linton to return to work. Later that afternoon, the neurologist performed the scheduled EMG nerve study and the results were normal. As a result, Dr. Sommerkamp advised Linton to try rest, elevation, splinting and pain medication. He rescheduled her appointment from June 21 to June 16 and told her to call if the pain persisted or worsened.

The pain did increase and Linton contacted her family doctor to report it and she was advised to go to the emergency room at St. Elizabeth Medical Center where she was initially treated by Dr. Harry Mills. He noted that she was experiencing a vascular phenomenon and he contacted Dr. Sommerkamp to discuss the matter. Dr. Sommerkamp advised that a vascular surgeon should be contacted to perform an arteriogram if the condition did not improve within 30 minutes.

The condition did not improve and Dr. Mills contacted Dr. Baldridge, a vascular surgeon, to examine the patient. On his orders, an arteriogram was performed on June 15. It revealed a clot in the brachial artery of the patient's left arm. As a result of the arteriogram, the patient also developed a clot in her right foot. After receiving heparin, intended to thin the blood and stop further clotting, Linton underwent surgery to remove the clots in her arm and foot. Unfortunately, the first surgery was unsuccessful because blood flow failed to reach both extremities due to abnormal clotting. Dr. Baldridge performed a second surgery which also failed.

After discussing the situation with hematologists, Dr. Baldridge concluded that Linton suffered from a rare condition called heparin-induced thrombocytopenia or "HIT." Due to the complications, doctors amputated her right foot, and later removed her left thumb and part of her left finger.

Linton sued Florence Medical Arts, Inc., and Drs. Sommerkamp and Baldridge claiming in separate causes of action that they failed to appropriately diagnose and treat a work-related soft-tissue strain to her left forearm. Each defendant obtained separate counsel and filed separate answers. She also sued St. Elizabeth Medical Center which settled with Linton for $100,000 prior to trial. A three-week jury trial in the circuit court resulted in a verdict of 9 to 3 for the remaining codefendants. The Court of Appeals reversed the jury verdict stating that the trial judge erred in granting separate peremptory challenges to the defendants. This Court accepted discretionary review.

## I. Standard of Review

■ The Court of Appeals should not substitute its judgment for that of the trial judge in determining whether antagonistic

interests exist for the purpose of awarding peremptory challenges in the absence of an abuse of discretion. Here, the trial judge reached a well-reasoned decision based on established precedent, and there is no basis for a finding of an abuse of discretion or any clear error. The trial judge held a pretrial conference on the issue of peremptory challenges and made a specific finding that the antagonism existed between the defendants. The trial judge based his decision on a number of factors that weighed in favor of antagonism. The defendants were charged with separate acts of negligence, were represented by separate counsel and had individual theories of the case and apportionment of fault issues. These reasons were set out in an order issued to all parties.

■ On appeal, the question is not whether the reviewing court would have decided the issue differently, but whether the findings of fact are clearly erroneous, the opposite result is compelled or the trial judge abused his discretion. *See Cherry v. Cherry,* Ky., 634 S.W.2d 423 (1982); *ARA Services, Inc. v. Pineville Community Hospital,* Ky.App., 2 S.W.3d 104 (1999). The Court of Appeals incorrectly cited *Bowling Green Municipal Utilities v. Atmos Energy Corp.,* Ky., 989 S.W.2d 577 (1999). In that case, this Court remanded a matter to the trial court for retrial because it had failed to make a finding that there were antagonistic interests among the plaintiffs, noting that "... the exceptions of CR 47.03 only permit additional strikes when the interests of the parties are antagonistic or when extra jurors are called ..." *Id.* at 579. Here, it is clear that the trial judge specifically found that the interests of the codefendants were antagonistic, and thus complied with the requirements of CR 47.03. *Bowling Green Municipal Utilities, supra,* supports the

reasoning of the trial judge to award separate peremptory challenges.

## II. Application of CR 47.03

In pertinent part, CR 47.03 provides that:

1) In civil cases each opposing side shall have three peremptory challenges, but co-parties having antagonistic interests shall have three peremptory challenges each.

■ Generally, there are three elements to be considered in determining if coparties have antagonistic interests. They are 1) whether the coparties are charged with separate acts of negligence. *Roberts v. Taylor,* Ky., 339 S.W.2d 653 (1960) and *Mackey v. Greenview Hosp., Inc.,* Ky.App., 587 S.W.2d 249 (1979); 2) whether they share a common theory of the case. *Davenport v. Ephraim McDowell Mem'l Hosp., Inc.,* Ky.App., 769 S.W.2d 56 (1988); and 3) whether they have filed cross-claims. *Davenport, supra.* Additional important factors are whether the defendants are represented by separate counsel; whether the alleged acts of negligence occurred at different times; whether the defendants have individual theories of defense; and whether fault will be subject to apportionment. All of these factors are to be weighed by the trial court in determining if the defendants have antagonistic interests and thus are entitled to separate peremptory challenges.

■ In this case, the trial judge correctly weighed the factors. The order of the trial judge explained as follows:

Each party shall be entitled to four peremptory challenges during the jury selection process. It is not necessary that the cross-claim be asserted to establish antagonistic interests among the Defendants. Independent acts of negligence over a course of time are alleged

against the respective Defendants, each of whom practices distinct medical specialties. Because their acts are independent and occurred at different times, their interests are necessarily antagonistic to each other and the Court intends to give the jury an apportionment instruction. Therefore, these Defendants, each of whom has separate counsel, do not constitute one party litigant.

It was error for the Court of Appeals to give disqualifying weight to a single factor, the absence of cross-claims. *Davenport* states, "Surely, cross-claims or their absence, while not dispositive of the issue of the existence of antagonistic interests, is a fact to be weighed in the balance along with all the others." The absence of a cross-claim is not the only factor.

■ The Court of Appeals observed that the interests of the codefendants were not so disparate and distinct as to render them antagonistic for the purposes of CR 47.03. We must disagree because the clear language of the rule does not require the defendants to demonstrate a certain degree of antagonism, but only the existence of antagonism between the various healthcare providers at the time of jury selection, in order to permit separate peremptory challenges.

Before trial, counsel for Linton submitted an apportionment instruction. Inherent in the Kentucky law of apportionment, KRS 411.182, is that the interests of codefendants may be considered antagonistic. Each of the defendants used a strategy in the practice of this case prior to trial to minimize the amount of fault and damages that the jury could ultimately assign to them as codefendants. The discovery testimony of expert witnesses for each of the parties was clearly designed to reduce or limit their exposure.

The principles of apportionment do not require an all or nothing defense by the codefendants in order to establish antagonism. The apportionment system results in each coparty defendant 1) trying to convince a jury that they are not at all responsible for the injuries, and 2) in the event that the jury does find them responsible for a portion of the claims, trying to minimize that portion by casting blame on the other codefendants. The system is inherently antagonistic because it requires codefendants to attempt to shift responsibility to each other. The Court of Appeals failed to consider the role of apportionment and the clear antagonism which is created by that method of assessing liability. It failed to apply CR 47.03 and its reliance on *Davenport* was misplaced. That case was decided prior to the adoption of the apportionment statute, KRS 411.182.

■ We must recognize that interests that are antagonistic at the time of jury selection or when the trial judge makes a determination regarding entitlement to separate peremptory challenges, do not necessarily have to remain antagonistic throughout the trial in order to support the allocation of separate challenges. There can be no certainty as to what the evidence will demonstrate or precisely what the claims or defenses will be during trial. *See Sand Hill Energy, Inc. v. Ford Motor Co.*, Ky., 83 S.W.3d 483 (2002) (A plurality opinion on the issue of peremptory challenges). Here, the trial judge ordered separate peremptory challenges based on the record prior to the beginning of the trial. In fact, the trial judge physically separated the defendants and ordered that they have no contact with one another in the exercise of peremptory challenges consistent with this Court's decision in *Sand Hill Energy, supra*. There was no abuse of discretion by the trial judge in the allocation of the challenges. We recognize that *Sand Hill Energy* in-

volves a situation where a third party complaint was filed, but we find its reasoning to be applicable here where parties seek to limit liability under an apportionment instruction.

We find reliance by the Court of Appeals on the decisions of *Kentucky Farm Bureau Mut. Ins. Co. v. Cook*, Ky., 590 S.W.2d 875 (1979) and *Bowling Green Municipal Utilities* to be misplaced because in both cases the reversal was based on the fact that the interests of the parties granted the additional strikes were identical. That is not the situation here.

### III. Cross–Claim

Prior to the adoption of comparative negligence, and the enactment of KRS 411.182, a defendant was required to cross-claim for contribution against joint tortfeasors pursuant to KRS 412.030 or 454.040. Contemporary apportionment requirements including KRS 411.182 provide that fault in a tort action is automatically subject to apportionment among the parties to the action. This statute renders a cross-claim for contribution, as well as a counterclaim for contributory or comparative negligence, needless. KRS 411.182 deems codefendants that are charged with separate acts of negligence to be antagonistic because it requires apportionment of the total liability. *Cf. Dix and Assoc. Pipeline Contractors, Inc. v. Key*, Ky., 799 S.W.2d 24 (1990); CR 13.07.

Reliance on the cases of *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transportation Cabinet*, Ky., 983 S.W.2d 488 (1998) and *Cinelli v. Ward*, Ky.App., 997 S.W.2d 474 (1998), is misplaced. Neither decision is applicable. *Bob Hook Chevrolet, supra*, involved the interpretation of a statute which contained an administrative standard of review within the statute, and *Cinelli, supra*, concerned the interpretation of a contract which is a question of law.

In view of our decision in this case, it is unnecessary to consider the opinions from other jurisdictions. Kentucky law sufficiently addresses these issues.

It is the decision of this Court that the determination by the trial judge that the codefendants were entitled to separate peremptory challenges was not an abuse of discretion or clearly erroneous. The trial judge specifically found that the interests of the codefendants were antagonistic as required by CR 47.03. This ruling is supported by ample evidence and should not be disturbed on appellate review. Several factors which existed prior to trial such as separate counsel, separate experts, distinct specialties of the codefendants, different time frames for the treatment, independent allegations of negligence against the codefendants and the giving of an apportionment instruction, support the decision of the trial judge. The absence of cross-claims is only one factor in determining a finding of antagonistic interests. It must be evaluated with all the other necessary elements.

Therefore, the decision of the Court of Appeals is reversed and the judgment of the trial court exonerating the defendants is reinstated.

All concur.