619 S.E.2d 176

**Ercelle E. PRICE, Plaintiff Below, Appellant,**

v.

**CHARLESTON AREA MEDICAL CENTER, INC., a West Virginia Corporation; University of West Virginia Board of Trustees; and Associated Radiologists, Inc., a West Virginia Corporation, Defendants Below, Appellees.**

No. 31774.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 22, 2005.

Decided June 24, 2005.

Dissenting Opinion of Justice Starcher July 14, 2005.

665

Marvin W. Masters, Esq., Julie N. Langford, Esq., The Masters Law Firm, L.C., Charleston, for Appellant, Price.

Dina M. Mohler, Esq., Cheryl A. Eifert, Esq., Office of the General Counsel, Charleston Area Medical Center, Inc., Charleston, for Appellee, Charleston Area Medical Center, Inc.

Charles R. Bailey, Esq., Susan M. Harman, Esq., George J. Joseph, Esq., Bailey & Wyant, P.L.L.C., Charleston, for Appellee, University of West Virginia Board of Trustees.

Mark A. Robinson, Esq., C. Benjamin Salango, Esq., Flaherty, Sensabaugh & Bonasso, P.L.L.C., Charleston, for Appellee, Associated Radiologists, Inc.

BENJAMIN, Justice.

In this appeal, the appellant and plaintiff below, Ercelle E. Price, challenges the December 4, 2003, order of the Circuit Court of Kanawha County, West Virginia, denying his motion for a new trial following an adverse jury verdict in his medical malpractice action. The appellees and defendants below are Charleston Area Medical Center, Inc.; University of West Virginia Board of Trustees; and Associated Radiologists, Inc. The appellant's cause of action was based upon the alleged failure of the appellees to timely diagnose and treat his appendicitis and ruptured appendix. The appellant contends that, as a result, he suffered medical complications and permanent injury.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. One of the appellant's assignments of error concerns the assertion that the Circuit Court erred in granting, *sua sponte,* each of the appellees 3 peremptory challenges from the panel of 20 potential jurors. According to the appellant, the total of 9 peremptory challenges thus granted the appellees, compared to the 3 peremptory challenges granted him, resulted in the denial of a fair and impartial jury, especially since, as the appellant argues, the appellees presented a united defense against him.

Upon careful review, this Court finds merit in the appellant's assertion concerning the peremptory challenges afforded to the parties. Therefore, for the reasons expressed herein, the December 4, 2003, order of the Circuit Court is reversed, and this action is remanded to that Court for a new trial.

## I.

### Factual and Procedural Background

On November 26, 1998, appellant Price, age 74, went to the emergency room of Charleston Area Medical Center, Inc., (hereinafter "CAMC") complaining of nausea, shortness of breath and pain in the lower abdomen. His abdomen was distended, and he had a history of urinary problems, prostatitis (inflammation of the prostate) and alcoholism. The appellant was admitted to CAMC for observation.

The appellant asserted at trial that, while under the care of the appellees, his symptoms, examinations and test results clearly indicated appendicitis and a resulting ruptured appendix which should have been diagnosed early-on and promptly treated. The appellees asserted, however, that the symptoms, examinations and test results were common to a "host of medical problems," including: an ileus (an obstruction of the bowel), acute prostatitis or a combination of the two. According to the appellees, appendicitis was never ruled out, even though all indications, such as the absence of peritoneal

symptoms, were atypical of a diagnosis in that regard.

While in CAMC, appellant Price was seen by a number of physicians. A November 27, 1998, CT scan of the appellant was interpreted by Dr. James T. Smith as suggesting an ileus.[1] Dr. Smith was a radiologist working at CAMC and employed by Associated Radiologists, Inc. Three days later, however, the appellant began exhibiting symptoms consistent with alcohol withdrawal. The latter conclusion was in accord with the findings of Dr. Glen Allen Wright, a psychiatrist who saw the appellant in response to a physician's consultation request. Dr. Wright worked at CAMC and was employed by the University of West Virginia Board of Trustees. As later determined, however, the appellant was in the beginnings of sepsis (an infection related to his appendix).

Appellant Price's condition further deteriorated, and he was placed in the CAMC intensive care unit. On December 4, 1998, a lavage (washing out) of the appellant's abdomen indicated the presence of an infection. Exploratory surgery was then performed by Dr. John A. DeLuca who discovered that the appellant's appendix had ruptured. Abscess was also noted, and several follow-up surgeries upon the appellant's abdomen were required.

In November 2000, the appellant filed a medical malpractice action in the Circuit Court of Kanawha County against appellees Charleston Area Medical Center, Inc.; University of West Virginia Board of Trustees; and Associated Radiologists, Inc.[2] The complaint alleged that, as a result of the appellees' negligence, the appellant was injured "in that his appendix was infected and ruptured and went undiagnosed for several days resulting in severe complications and permanent injury."

Trial began on August 25, 2003, and on September 4, 2003, the jury returned a verdict in favor of the appellees. The verdict form contained two questions as to each appellee, the first question asking the jury to determine whether the appellee had deviated from the standard of care in its care and treatment of the appellant, and the second question asking the jury to determine, if it found such a deviation, whether the deviation proximately caused the appellant's injury. The jury, in each case, found that the appellee had not deviated from the standard of care. As a result, the jury did not reach the issues of proximate cause or damages.

On December 4, 2003, the Circuit Court denied appellant Price's motion for a new trial.

II.

Standard of Review

■ Rule 59(a) of the *West Virginia Rules of Civil Procedure* authorizes the filing of a motion for a new trial following an adverse jury verdict. *See generally,* Lugar & Silverstein, *West Virginia Rules of Civil Procedure,* p. 447–50 (Michie 1960). As long recognized, this Court's standard of review concerning a ruling upon such a motion is whether the circuit court abused its discretion. *Williams v. Charleston Area Medical Center,* 215 W.Va. 15, 18, 592 S.E.2d 794, 797 (2003); *Andrews v. Reynolds Memorial Hospital,* 201 W.Va. 624, 629, 499 S.E.2d 846, 851 (1997); *In re State Public Building Asbestos Litigation,* 193 W.Va. 119, 124–26, 454 S.E.2d 413, 418–20 (1994), *cert. denied,* 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); syl. pt. 1, *Cook v. Harris,* 159 W.Va. 641, 225 S.E.2d 676 (1976).

■ More specifically, syllabus point 4 of *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976), holds: "Although the ruling of a trial court in granting or

---

1. As the brief filed in this Court by appellee Associated Radiologists, Inc., states:

   Dr. Smith found multiple loops of distended large and small bowel which contained amounts of fluid in some regions. He believed that this pattern was most consistent with an ileus. Notably, Dr. Smith, in his role as the radiologist, never examined the patient in a clinical setting but was responsible for reading and interpreting the x-rays requested by physicians in their care of Mr. Price.

2. Subsequently, other named defendants were either dismissed or considered to be a part of the University of West Virginia Board of Trustees for purposes of the action.

denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 2, *Phares v. Brooks*, 214 W.Va. 442, 590 S.E.2d 370 (2003); syl. pt. 2, *Heitz v. Clovis*, 213 W.Va. 197, 578 S.E.2d 391 (2003); syl. pt. 1, *Matheny v. Fairmont General Hospital*, 212 W.Va. 740, 575 S.E.2d 350 (2002); syl. pt. 2, *Witt v. Sleeth*, 198 W.Va. 398, 481 S.E.2d 189 (1996).

Here, although the Circuit Court conducted a hearing upon the appellant's motion for a new trial, the order of December 4, 2003, does not set forth reasons as to why the motion was denied.

### III.

### Discussion

Appellant Price contends that the Circuit Court committed error in granting, *sua sponte*, each of the appellees 3 peremptory challenges from the panel of 20 potential jurors. Specifically, in giving the appellees an aggregate of 9 peremptory challenges to the appellant's 3 challenges, the Circuit Court divided the panel into a group of 14, from which the members of the jury would be selected, and a group of 6, from which two alternate jurors would be selected. The appellant and each of the appellees were given 2 peremptory challenges as to the group of 14, and they were each given 1 peremptory challenge as to the group of 6. That procedure resulted in a jury of six members, plus two alternates.[3]

The appellant challenged the Circuit Court's ruling and asserts before this Court that the 9 peremptory challenges granted the appellees, in relation to the 3 afforded him, resulted in the denial of a fair and impartial jury, especially since the appellees presented a united defense against him. According to the appellant, the appellees' united defense was that, in view of the difficulty of making a clear diagnosis of his immediate medical problem, a close observation of the appellant over a period of time at CAMC, in conjunction with further examinations and tests, did not constitute a deviation from the standard of care and did not proximately cause his injuries.[4]

Rule 47(b) of the *West Virginia Rules of Civil Procedure*, concerning peremptory challenges, provides as follows:

Unless the court directs that a jury shall consist of a greater number, a jury shall consist of six persons. The plaintiff and the defendant shall each have two peremptory challenges which shall be exercised one at a time, alternately, beginning with the plaintiff. Several defendants or several plaintiffs may be considered as a single party for the purpose of exercising challenges, [or the court] may allow additional peremptory challenges and permit them to be exercised separately or jointly.

A fair reading of Rule 47(b) suggests that it provides a circuit court with the degree of flexibility or discretion required in determining the number of additional peremptory challenges to be allowed in a trial involving multiple parties where the interests of co-plaintiffs or co-defendants are antagonistic or hostile. The authority of a circuit court in that regard may be found in two West Virginia cases which predate the adoption of the *West Virginia Rules of Civil Procedure*: *Tawney v. Kirkhart*, 130 W.Va. 550, 44 S.E.2d 634 (1947), and *Horchler v. Van Zandt*, 120 W.Va. 452, 199 S.E. 65 (1938).[5]

---

**3.** During the jury selection process, the Circuit Court stated:

We're going to seat a panel of six plus two alternates just to make sure that we end up with six at the end of the day .... So, each side will get three strikes, two on the main panel, and one on the alternate. * * * .Basically, three for the plaintiff, three for Mr. Bailey, three for Ms. Mohler and three for Mr. Robinson? * * * The last six that we'll call you'll each take one strike from. So, there will be a line to show where the alternate panel starts.

**4.** In protesting the granting of separate peremptory challenges to the appellees, the appellant indicated to the Circuit Court that no cross-claims had been filed and that the appellees were "lined up with the same basic story against the plaintiff."

**5.** The West Virginia Rules of Civil Procedure for Trial Courts of Record, now known as the West Virginia Rules of Civil Procedure, were adopted by this Court in 1959 and went into effect on July 1, 1960.

Syllabus point 3 of *Horchler* holds: "It is not prejudicial error against a defendant in a law action for the trial court to place in the jury box twenty-four qualified jurors in order that defendants having antagonistic interests in the case may be afforded opportunity for separate peremptory challenges." [6]

■ In *Tawney v. Kirkhart*, this Court recognized that defendants whose interests are the same exercise the right to peremptory challenges "in common." However, where the interests of defendants are hostile, "upon motion and proper showing it is error to decline the statutory number of peremptory challenges to each defendant." 130 W.Va. at 561, 44 S.E.2d at 641. Nevertheless, concluding, in *Tawney,* that a proper showing for separate peremptory challenges with regard to the defendant railroad company and defendant Kirkhart had not been made, the opinion states:

> The testimony at the trial fully justifies the statement of counsel for the railroad company that the interests of Kirkhart and their client were conflicting and hostile. There was, however, no showing of that nature before the Circuit Court at the time of the motion nor was the motion accompanied by an offer of such a showing. In this instance an examination of the pleadings possibly would show hostility, but we do not believe the mere statement that conflicting interests exist, without more, required the judge to take the initiative in inspecting the pleadings. If the pleadings are depended upon as the required showing the movant should direct the attention of the court to the reasons for so regarding

them. Otherwise it is not error to disregard them.

130 W.Va. at 561–62, 44 S.E.2d at 641.[7] *See also,* F. Cleckley, R. Davis, L. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure,* p. 841 n. 380 (Juris Publishing 2002).

■ What the reasoning in *Tawney* brings to Rule 47(b) is twofold: (1) that the granting of separate peremptory challenges to two or more plaintiffs or two or more defendants must be upon the basis that the interests of the plaintiffs or of the defendants are antagonistic or hostile and (2) that the plaintiffs or the defendants, as the case may be, bear the burden of showing both the existence of such adversity and that the granting of separate peremptory challenges is necessary for a fair trial. As discussed below, those principles are consistent with various cases from other jurisdictions.

In *Kloetzli v. Kalmbacher,* 65 Md.App. 595, 501 A.2d 499 (1985), *cert. denied,* 305 Md. 621, 505 A.2d 1342 (1986), the plaintiff, Kloetzli, appealed from an adverse jury verdict in a personal injury action brought against a police officer and the Mayor and City Council of Baltimore City. Kloetzli asserted that the trial court committed error in granting each of the defendants separate peremptory challenges. The applicable procedural rule provided in part: "[S]everal plaintiffs or several defendants shall be considered as a single party unless the court determines that adverse or hostile interests between plaintiffs or between defendants justify allowing to each of them separate peremptory challenges [.]"

---

**6.** *See generally,* 47 Am.Jur.2d *Jury* § 236 (1995) and 50A C.J.S. *Juries* § 427 (1997). Moreover, as stated in D. Evins, Annotation, *Jury: Number of Peremptory Challenges Allowable in Civil Case Where There Are More Than Two Parties Involved,* 32 A.L.R.3d 747 (1970):

> Generally speaking, a statute which allows a specific number of peremptory challenges to "each party," "each of the parties," *etc.,* has been construed to permit a single set of peremptory challenges to multiple parties with common interests; that is, multiple parties are treated as a single party for purposes of the statute. If, however, a determination is made that the interests of the multiple parties are

antagonistic or diverse, considerable authority is to be found for the proposition that such multiple parties are each entitled to the full number of peremptory challenges allowed by the statute to a party.

**7.** In addition to peremptory challenges, the *Tawney* opinion concerned immunity under the West Virginia workers' compensation system. The portion of *Tawney* concerning immunity was subsequently superseded by statute. *Deller v. Naymick,* 176 W.Va. 108, 112 n. 7, 342 S.E.2d 73, 77 n. 7 (1985); *Bennett v. Buckner,* 150 W.Va. 648, 654, 149 S.E.2d 201, 204–05 (1966). The discussion in *Tawney* concerning peremptory challenges was not affected.

The Court of Special Appeals of Maryland held, in *Kloetzli*, that the granting of the additional peremptory challenges did not constitute an abuse of discretion because, as a result of the statements and representations of respective counsel placed upon the record during the jury selection process, a basis was established before the trial court showing adversity in the interests of the defendants and that the additional challenges were justified.[8] As the Court in *Kloetzli* said:

> We hold that the determination of whether multiple plaintiffs or multiple defendants are entitled to additional challenges under Rule 2–512(h) involves a two step process. First, the court must make a factual finding of adverse or hostile interest, and second, the court, in its discretion, must determine whether that interest would justify allowing the added challenges. Furthermore, the burden of establishing the existence of that adverse or hostile interest is upon the proponent of the request. * * * The adversity between [the proponents] must be found or not found as of the time the decision on separate challenges is made.

65 Md.App. at 599, 501 A.2d at 501, 503.

Similarly, in *Sommerkamp v. Linton*, 114 S.W.3d 811 (Ky.2003), the trial court granted separate peremptory challenges to multiple defendants. In *Sommerkamp*, the plaintiff brought an action against several health care providers for the alleged failure to appropriately diagnose and treat a soft tissue strain to her left forearm. According to the plaintiff, the negligence of the providers resulted in serious complications and the need for corrective surgeries. The relevant proce-

dural rule provided: "In civil cases each opposing side shall have three peremptory challenges, but co-parties having antagonistic interests shall have three peremptory challenges each."

Upholding a jury verdict for the defendants, the Supreme Court of Kentucky in *Sommerkamp* held that, under the circumstances disclosed in the record, the trial court's granting of the separate peremptory challenges did not constitute an abuse of discretion. In so holding, the Court stated that the primary factors to be considered in determining if co-parties have antagonistic or hostile interests include: (1) whether the co-parties are charged with separate acts of negligence, (2) whether they share a common theory of the case and (3) whether they have filed cross-claims. 114 S.W.3d at 815. Moreover, as the Court indicated: "Additional important factors are whether the defendants are represented by separate counsel; whether the alleged acts of negligence occurred at different times; whether the defendants have individual theories of defense; and whether fault will be subject to apportionment." 114 S.W.3d at 815.

Concluding that the trial court properly exercised its discretion, the Court, in *Sommerkamp*, observed:

> Here, the trial judge reached a well-reasoned decision based on established precedent, and there is no basis for a finding of an abuse of discretion or any clear error. The trial judge held a pretrial conference on the issue of peremptory challenges and made a specific finding that the antagonism existed between the defendants. The trial judge based his decision

---

8. The opinion in *Kloetzli* states:

> The court heard first from counsel for appellant [plaintiff] who denied any possible hostile or adverse interests. Next counsel for appellee Mayor and City Council pointed out that insofar as the negligence claims were concerned he was "claiming that the officer is not an agent and servant of the Mayor and City Council . . . ."
>
> Lastly, counsel for appellee [police officer] Kalmbacher addressed the court and admitted that "our interests are the same insofar as we are defending Officer Kalmbacher against all these claims . . . but that [t]hey become diverse

if there is any liability on the part of Officer Kalmbacher." Furthermore, he asserted that if Kalmbacher was acting as an agent of the City, then the City's self-insurance program would pay for up to $20,000 of any judgment against him.

> With these comments, counsel for appellee Kalmbacher placed on the record a basis upon which the court could determine whether there was an adverse interest. The Mayor and City Counsel had already taken a position adverse to Kalmbacher on the issue of agency. Counsel for Kalmbacher then focused on that opposing position and gave his reasons.

65 Md.App. at 602–03, 501 A.2d at 502.

on a number of factors that weighed in favor of antagonism. The defendants were charged with separate acts of negligence, were represented by separate counsel and had individual theories of the case and apportionment of fault issues. These reasons were set out in an order issued to all parties.

114 S.W.3d at 811.

■ In *King v. Special Resource Management*, 256 Mont. 367, 846 P.2d 1038 (1993), the Supreme Court of Montana held that parties seeking additional peremptory challenges must request them prior to trial and that, to afford a basis for review, "the trial court should expressly set forth in the record the reasons for its ruling and the facts on which it relied in making its decision." 256 Mont. at 374, 846 P.2d at 1042.[9] *See also, Thompson v. Presbyterian Hospital, supra,* 652 P.2d at 262, indicating that, to justify additional peremptory challenges, co-parties must "affirmatively show" the presence of a serious dispute among them.

In *Barker v. Benefit Trust Life Insurance Company,* 174 W.Va. 187, 324 S.E.2d 148 (1984), this Court observed that "a litigant's right to peremptory challenges of prospective jurors is considered necessary to secure an impartial and unbiased jury." 174 W.Va. at 190, 324 S.E.2d at 151. To safeguard that proposition, this Court concludes that the principles expressed in *Horchler* and *Tawney* concerning the propriety of allowing additional peremptory challenges should be updated to assist circuit courts in this State in the exercise of their discretion under Rule 47(b).

■ Accordingly, this Court holds that in the determination by the trial court of the number of peremptory challenges to be allowed two or more plaintiffs or two or more defendants pursuant to Rule 47(b) of the *West Virginia Rules of Civil Procedure,* plaintiffs or defendants with like interests are ordinarily to be considered as a single party for the purpose of allocating the challenges. Where, however, the interests of the plaintiffs or the interests of the defendants are antagonistic or hostile, the trial court, in its discretion, may allow the plaintiffs or the defendants separate peremptory challenges, upon motion, and upon a showing that separate peremptory challenges are necessary for a fair trial. Specifically, in determining whether the interests of two or more plaintiffs or two or more defendants are antagonistic or hostile for purposes of allowing separate peremptory challenges under Rule 47(b) of the *West Virginia Rules of Civil Procedure,* the allegations in the complaint, the representation of the plaintiffs or defendants by separate counsel and the filing of separate answers are not enough. Rather, the trial court should also consider the stated positions and assertions of counsel and whether the record indicates that the respective interests are antagonistic or hostile. In the case of two or more defendants, the trial court should consider a number of additional factors including, but not limited to: (1) whether the defendants are charged with separate acts of negligence or wrongdoing, (2) whether the alleged negligence or wrongdoing occurred at different points of time, (3) whether negligence, if found against the defendants, is subject to apportionment, (4) whether the defendants share a common theory of defense and (5) whether cross-claims have been filed. To warrant separate peremptory challenges, the plaintiffs or defen-

---

**9.** The opinion in *King* notes: "The side with the greater number of peremptory challenges clearly has a tactical advantage created by its ability to eliminate potentially unfavorable jurors without cause." 256 Mont. at 371, 846 P.2d at 1041. Moreover, as stated in *Thompson v. Presbyterian Hospital,* 652 P.2d 260, 267 (Okla.1982): "A jury panel that emerges from a selection process tainted by an exercise of excessive challenges cannot be said to possess the constitutionally-mandated attributes of neutrality and detachment." *See, Gestring v. Mary Lanning Memorial Hospital Association,* 259 Neb. 905, 916, 613 N.W.2d 440, 450 (2000), new trial awarded where the granting of separate peremptory challenges to non-adverse defendants unfairly afforded them a "substantial edge in determining the composition of the jury;" and *Wardell v. McMillan,* 844 P.2d 1052, 1061 (Wyo.1992), stating that allowing "non-antagonistic multi-party defendants a two-, three- or four-to-one advantage in the exercise of peremptory challenges affords them undue influence over the composition of the jury and implicates the single-party plaintiff's right to a fair trial." *See generally,* G. Jacobi, Annotation, *Effect of Allowing Excessive Number of Peremptory Challenges,* 95 A.L.R.2d 957 (1964).

dants, as the case may be, as proponents, bear the burden of showing that their interests are antagonistic or hostile and that separate peremptory challenges are necessary for a fair trial.

■ Finally, in ruling upon the request of two or more plaintiffs or two or more defendants for separate peremptory challenges under Rule 47(b) of the *West Virginia Rules of Civil Procedure*, the trial court shall set forth, on the record, its reasons for so ruling in a manner sufficient to permit meaningful appellate review.

■ In this action, the Circuit Court, *sua sponte*, informed counsel for the parties that it was going to grant each of the appellees separate peremptory challenges from the panel of 20 potential jurors, i.e., 9 overall challenges for the appellees and 3 for the appellant. No reason for that ruling was given until it was challenged by the appellant's counsel at which time the Circuit Court briefly indicated that additional challenges were being granted the appellees because the appellant had alleged separate theories against them and because CAMC was not the appellees' "superior." No further comment was made by the Circuit Court during the jury selection process; nor did counsel for the appellees move for or set forth any reasons or grounds in support of the ruling. Soon after, final jury selection was completed, and opening statements began.

■ As indicated in *Tawney, supra*, the mere statement that conflicting interests exist, without more, is not sufficient to warrant the granting of separate peremptory challenges to one or more defendants in a civil trial. What the above case decisions have in common, *inter alia*, is that the decision to grant separate peremptory challenges must be based upon a determination, from the factors existing at the time the ruling is made, that antagonistic or hostile interests are shown and that separate peremptory challenges are necessary for a fair trial. With the question of an impartial jury and a fair trial arising in such circumstances, the trial court's ruling and its reasons therefor

must be placed upon the record for purposes of appellate review. The ruling of the Circuit Court, in this action, does not withstand scrutiny under those standards.

Here, the question of whether the interests of the appellees were adverse was in need of a more thorough resolution by the Circuit Court. On the one hand, the appellees were not united because they were in conflict over whether Dr. Smith of Associated Radiologists, Inc., should have read the appellant's CT scan as suggesting appendicitis rather than an ileus, i.e., Dr. Smith indicated that he was not told by the other practitioners to rule out appendicitis. Moreover, when it was discovered that certain, original laboratory reports concerning the appellant were missing, the responsibility therefor fell upon CAMC rather than the other appellees. Finally, inasmuch as a number of days elapsed between the appellant's arrival at the emergency room and the discovery that his appendix had ruptured, the alleged negligence of the appellees may have been diverse and, therefore, subject to antagonistic or hostile defenses. On the other hand, the above conflicts among the appellees can be interpreted as non-dispositive and that the appellant is reasonable in his suggestion that the appellees were unified in their defense, i.e., that, in view of the difficulty of making a clear diagnosis of his immediate medical problem, a close observation of the appellant over a period of time at CAMC, in conjunction with further examination and tests, did not constitute a deviation from the standard of care and did not proximately cause his injuries. Such adverse considerations, *a fortiori*, required a more complete development on the record of the ruling of the Circuit Court in granting the separate peremptory challenges.

### IV.

### Conclusion

Upon all of the above, this Court finds merit in appellant Price's assignment of error concerning the separate peremptory challenges granted to the appellees. Therefore,

for the reasons stated above, the December 4, 2003, order of the Circuit Court of Kanawha County is reversed, and this action is remanded to that Court for a new trial.[10]

Reversed and Remanded

STARCHER, J., dissenting.

(Filed July 14, 2005)

I am in agreement with the majority's holding that "to justify additional peremptory challenges, co-parties must 'affirmatively show' the presence of a serious dispute among them." (Op. at 184). Circuit judges should carefully assess a party's motion for additional peremptory challenges, and ensure that there is a serious, honest dispute between the co-parties, not a tactical fake dispute merely so the parties can get more strikes.

I dissent from the majority's opinion because the opinion avoided discussing multiple errors by the trial court that are likely to arise again on the retrial of this case. One error that is most egregious involves the defendants' use of information obtained through *ex parte* violations of the physician-patient privilege. The defendants spoke with one of the plaintiff's treating physicians, Dr. Glen A. Wright, several years before trial about a wholly unrelated problem—the plain-tiff's alcoholism—and had the doctor solicit the unauthorized release of the plaintiff's medical records to himself, without the plaintiff's knowledge or consent. Dr. Wright reviewed the records at the direction of defense counsel, and assisted the defendants in formulating a trial strategy. Dr. Wright then testified at trial, not as a fact witness, but as an expert for the defense.

These actions by defense counsel are so outrageous as to shock the conscience; that the circuit court did not intervene and prohibit Dr. Wright from testifying is even more amazing.

On remand, I would hold the defendants' feet to the fire and prevent the recurrence of such conduct, and prevent the defendants from profiting on retrial from their prior misconduct.

I respectfully dissent, and I am authorized to state that Chief Justice Albright joins in this separate opinion.

---

**10.** In view of the remand of this action for a new trial, it is not appropriate to address the appellant's assignments of error concerning: (1) whether the evidence at trial was sufficient for the giving of a "multiple methods of treatment" instruction, (2) whether the Circuit Court erred in failing to strike juror number 80 for cause, (3) whether a foundation was established at trial for the admission of CAMC's exhibits 1 and 2, (4) whether the amount of evidence admitted at trial concerning the appellant's use of alcohol was excessive and (5) whether the Circuit Court erred in restricting the testimony of the appellant's causation expert upon the ground that such testimony was cumulative. With regard to the latter issue, it should be noted that the jury found that the appellees had not deviated from the standard of care. Thus, the restriction of the appellant's expert notwithstanding, the jury never reached the issues concerning proximate cause.

One of the remaining assignments of error concerns the appellant's assertion that an attorney for appellee University of West Virginia Board of Trustees made *ex parte* contacts with one of the appellant's treating physicians in violation of the physician-patient privilege. Upon a review of the record, this Court concludes that this assignment is without merit. The appellant did not pursue this issue until after the trial, although he had reason to know at least as early as September 2002 that such contacts may have occurred. Therefore, the issue was waived.

Finally, the appellant contends that the Circuit Court committed error in refusing his instruction on spoliation of the evidence based upon the discovery that certain, original laboratory reports concerning the appellant were missing. This Court is of the opinion, however, that, inasmuch as duplicate reports in the form of computer records were able to be substituted for the missing laboratory reports, the appellant was unable to show that he was prejudiced to the extent warranting an instruction on spoliation of the evidence. Syl. pt. 2, *Tracy v. Cottrell*, 206 W.Va. 363, 524 S.E.2d 879 (1999).